**PANDA ENERGY CORPORATION,**
Appellant,

v.

**ALLSTATE INSURANCE COMPANY,**
et al., Appellees.

No. 05–02–00182–CV.

Court of Appeals of Texas,
Dallas.

Nov. 14, 2002.

Nina Cortell, Haynes & Boone, L.L.P., Dallas, for Appellant.

Rod Phelan, Baker & Botts, L.L.P., Robert L. Hoffman, Dallas, for Appellees.

Before Justices MORRIS, MOSELEY, and FRANCIS.

## OPINION

Opinion By Justice MORRIS.

This appeal concerns the scope of the trial court's power to enforce its judgment and protect its jurisdiction after its plenary power has expired. At issue is the trial court's anti-suit injunction granted approximately five months after it signed the final judgment in the case. The injunction's stated purpose is to prevent Panda Energy Corporation from relitigating matters decided by the final judgment. Panda contends the trial court exceeded its jurisdictional power or, in the alternative, abused its discretion by granting the injunction. We conclude the trial court

abused its discretion. We reverse the trial court's order and dissolve the injunction.

## I.

Although this case has a complex factual and procedural history, the facts relevant to our decision are relatively straightforward. In 1994, Panda Energy Corporation filed suit against numerous defendants in Johnson County alleging claims for misappropriation of corporate opportunities and related causes of action. All of the defendants that had been served and had answered, including Allstate Insurance Company and Allstate Life Insurance Company (collectively "Allstate"), Heard Energy Corporation, CLF Energia Y Electricidad, S.A., and Robert A. Wolf, challenged venue in Johnson County and asked the court to transfer the case to Dallas County. The parties entered into a stipulation under which Panda agreed to have the case against the answering defendants severed and transferred to Dallas County, where it was filed in the 193rd Judicial District Court. The claims against the "nonserved defendants" remained in Johnson County. The stipulation stated that if a "nonserved defendant" were served with process and a default judgment were taken against it, "such default judgment shall have no res judicata, collateral estoppel, evidentiary, or other effect on the cause severed and pending in the [Dallas] Court against Defendants in that proceeding." Several months after signing and filing the stipulation, Panda obtained a default judgment in the Johnson County action against CLF Energia Sud Americana, S.A. for over four hundred and fifty million dollars.

Panda moved to enforce the default judgment against all the defendants in the Dallas County suit under theories of fraudulent transfer and alter ego. In response, Allstate sought and obtained an "Order on Relationship Between Parallel Proceedings" and an "Order on Motion Relating to Enforcement of Johnson County Default Judgment." In the latter order, the Dallas court held that the default judgment was not enforceable against Allstate. In the Dallas suit, Panda ultimately withdrew its claims based on the Johnson County default judgment.

After withdrawing its default judgment claims from the Dallas action, Panda filed new pleadings in Johnson County, including a "First Amended Petition to Enforce Judgment and Application for Garnishment." This new pleading renamed the Dallas defendants as defendants in the Johnson County suit and sought to enforce the default judgment against all of them. Allstate moved for an abatement in the Johnson County action, which was granted. The Johnson County court ordered that Panda's claims against all the defendants except the default judgment debtor, CLF Energia Sud Americana, be dismissed without prejudice.

From February through May 2001, Panda tried its case in Dallas to a jury. The trial resulted in a verdict in favor of Panda, and Panda was awarded damages of approximately $3.5 million. Both Panda and the defendants have appealed this judgment in a separate appeal.

In October 2001, Panda filed an application for a turnover order against CLF Energia Sud Americana in the Johnson County court based on the default judgment previously obtained there. In November, Panda filed a second amended petition in Johnson County again adding the Dallas defendants as parties and seeking to enforce the default judgment against them on the grounds of fraudulent transfer, successor liability, and alter ego. Finally, in December, Panda filed a "Motion for Entry of Judgment *Nunc Pro Tunc* or for Rule 308 Order" requesting

the Johnson County trial court to allow Panda to enforce the default judgment against CLF Energia Y Electricidad as the successor corporation to CLF Energia Sud Americana.

On December 28, 2001, the Dallas defendants filed a motion in the Dallas court asking the court to grant a permanent anti-suit injunction against Panda to prevent it from pursuing enforcement of the default judgment against them. The Dallas court signed an order granting a permanent injunction on January 18, 2002. The order states the injunction is necessary to "address a direct threat to the court's jurisdiction" and "prevent Panda from evading the public policies favoring the finality of judgments, maintaining the stability of court decisions, promoting judicial economy, and preventing double recoveries." The order further states the injunction is intended to prevent a multiplicity of suits and protect the Dallas defendants from vexatious and harassing litigation. The order generally enjoins Panda from instituting or prosecuting any action in the trial courts of this State or any other state or country that involves:

(1) any of Panda's claims for the purpose or with the result of enforcing against or collecting from the Dallas defendants the default judgment;

(2) any of Panda's claims against the Dallas defendants seeking relief inconsistent with or in addition to the relief granted in the Dallas court's declaratory and final judgments to the extent such claims arise out of the transactions made the basis of the Dallas suit;

(3) claims and causes of action actually alleged and relief actually sought in Panda's trial pleadings in the Dallas case;

(4) claims and causes of action actually alleged and relief actually sought by Panda against the Dallas defendants in pleadings prior to its trial pleadings; or

(5) claims that Panda did not make against the Dallas defendants in the Dallas suit but with reasonable diligence could have been made to the extent such claims arise out of the transactions made the basis of the Dallas suit.

Panda appeals the Dallas trial court's order, asking us to dissolve the injunction on the grounds that the court did not have jurisdiction to make the order and the injunction constitutes a clear abuse of discretion. For the reasons that follow, we conclude the trial court abused its discretion in granting the injunction.

## II.

In analyzing the issues presented, our focus is the scope of the trial court's power to enforce and protect its final judgment. Key to this case is the fact that the anti-suit injunction was issued after the final judgment was signed and after the trial court's plenary jurisdiction had expired. Panda argues the order does not protect or aid in the enforcement of the judgment, but rather expands upon it. Accordingly, Panda contends the trial court exceeded its jurisdiction by granting the injunction.

The scope of a trial court's jurisdiction is extremely limited after its plenary power over a case has expired. The limited power that may be exercised by the court is to "cause its judgments and decrees to be carried into execution." *See* Tex.R. Civ. P. 308. To achieve this end, the court may employ "suitable methods." *See Arndt v. Farris,* 633 S.W.2d 497, 499 (Tex.1982). Although there are no strict guidelines about what constitutes a "suitable method" to enforce or aid in the enforcement of a judgment, it has long been recognized that the prevention of other suits that may directly interfere with enforcement of the judgment is within the

court's power. *See Milam County Oil Mill Co. v. Bass,* 106 Tex. 260, 163 S.W. 577, 578 (1914) (orig. proceeding). In this case, the Dallas defendants argue that Panda's suit in Johnson County directly interferes with the Dallas judgment because Panda is seeking to relitigate matters that are finally decided by the judgment. The defendants fail to explain, however, how such alleged relitigation directly affects the execution and enforcement of the Dallas judgment.

In *Milam County Oil Mill Co. v. Bass,* the Texas Supreme Court extensively addressed the limits of a court's power to enjoin other lawsuits that seek to relitigate matters already decided by a final judgment. *See id.* Although the relators in *Milam* were seeking a writ of prohibition and not an anti-suit injunction, the analysis is the same. Both the power to issue a postjudgment anti-suit injunction and the power to issue a writ of prohibition stem from the same source: a court's power to protect and enforce its judgments. *See id.* In analyzing a court's power to prevent other lawsuits from going forward, the court stated "there is a manifest difference between the enforcement of a judgment and the prevention of a suit which makes no attempt to obstruct its execution but denies its conclusiveness upon what is alleged to be another cause of action." *Id.* The court went on to emphasize that the jurisdiction of a court is not invaded by the mere assertion of rights in contravention of a judgment so long as the operation of the judgment is left unimpeded. The court concluded that:

> The power of a court to enforce its jurisdiction does not include an authority to prevent the prosecution of any suit to which a judgment of the court may be an effectual bar, but which, beyond presenting an issue as to the conclusiveness of the judgment upon the asserted cause of action, makes no attempt to disturb it, or to interfere with its execution or the exercise of rights established by it, as such suit does not conflict with the exercise of that power which constitutes jurisdiction in the court, the power to hear and determine the cause and enforce the judgment rendered, and therefore does not violate its jurisdiction.

*Id.* at 578–79. Upon concluding the court had no jurisdiction to enjoin the second suit because its prosecution did not directly affect the court's judgment, the court denied the writ.

Twenty years later, the Texas Supreme Court elaborated upon *Milam* by distinguishing it. In *Houston Oil Co. v. Village Mills Co.,* 123 Tex. 253, 71 S.W.2d 1087 (1934) (orig. proceeding), the court issued a partial writ of prohibition to prevent a lawsuit from relitigating rights to land already established by a final judgment. *Id.* at 1090. The court reasoned that where the second suit "directly involves the relitigation of rights established by the judgment, and is of such a nature that, if successfully prosecuted, will result in a judgment which will purport the divesting of those rights, the prosecution of such suit will be prohibited as being an interference with the enforcement of the judgment of this court." *Id.* at 1089. Because the claims in *Village Mills* involved title to land, the prosecution of the second suit directly interfered with the rights established by the prior judgment by clouding the land's title. The court contrasted these facts with those in *Milam* where, according to the court, there was no clear indication that the second suit would "directly interfere with the operation of the prior judgment of this court." *Id.* at 1090. *Village Mills,* therefore, is consistent with *Milam's* holding that after judgment has been rendered, a court has the power to prevent other lawsuits only when they di-

rectly interfere with the execution of its judgment.

The post-plenary power of a court to enforce its judgment by enjoining other suits was then dramatically expanded, at least in theory, by the supreme court in *City of Dallas v. Dixon*, 365 S.W.2d 919 (Tex.1963), *rev'd on other grounds sub nom., Donovan v. City of Dallas*, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). The *Dixon* court focused on the language in *Village Mills* relating to the divesting of rights and stated "[i]t is difficult to conceive of a case between the same parties and directly involving relitigation of rights established by a judgment, which, if successfully prosecuted, would not result in a judgment purporting the divesting of those rights." *Id.* at 925. In an apparent departure from the jurisdictional analysis in *Milam*, the court wrote, "[w]e consider *Village Mills* and other cases ... subsequent in point of time to [*Milam*], to establish jurisdiction of this Court and Courts of Civil Appeals to issue all writs necessary to prevent prosecution of a suit in which the plaintiffs, bound by a prior judgment of the court, seek to relitigate issues which were determined by the prior judgment."[1] *Id.* The court then found the exercise of such jurisdiction "mandatory" when the second suit interferes with the enforcement or destroys the efficacy of the court's prior judgment. *Id.*

Although *Dixon* stands for the proposition that a court has the *power* to prevent any relitigation of issues settled by its judgment, the court was careful to note that such relief was not *proper* where the relitigation does not directly interfere with enforcement of the court's prior judgment or the rights of the parties arising from it. *Id.* at 923. When the second suit does not affect the efficacy of the judgment, the court held "[t]he remedy lies in the trial court in the defensive plea of res judicata." *Id.* To hold otherwise, the court reasoned, would result in the abandonment of the res judicata defense in favor of extraordinary remedies. *Id.* Accordingly, after *Dixon*, the question was no longer whether the court had exceeded its jurisdiction by enjoining the parties from pursuing new actions involving the same issues, but whether the court had abused its discretion in doing so.

■ Since *Dixon*, the supreme court has consistently held that enjoining other lawsuits is not a "proper" or "appropriate" method of enforcing a judgment where the second suit has no effect on the judgment other than seeking to relitigate the same issues. *See, e.g., Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989) (original proceeding seeking writ of prohibition not appropriate to resolve claim of res judicata); *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 788 (Tex.1978) (second suit properly barred only where it relitigates issues *and* filing of action or request for a hearing destroys effectiveness of the prior judgment). The appellate courts have also refused to enjoin new litigation in cases where the defense of res judicata would provide sufficient relief. *See, e.g., Jones v. McDonald*, 880 S.W.2d 260, 263 (Tex.App.-Waco 1994, no writ); *Mid Plains Reeves, Inc. v. Baskin*, 793 S.W.2d 286, 288 (Tex.App.-El Paso 1990, no writ). Accordingly, we conclude that in cases where new litigation does not directly interfere with the efficacy of a prior final judgment, the court abuses its discretion by granting injunctive relief preventing the new litigation.

The Dallas defendants urge us to apply a different test to determine whether the

---

1. We are unsure what the court meant when it used the phrase "establish jurisdiction" as courts cannot enlarge their jurisdiction by means of their own case law.

trial court in this case abused its discretion by issuing the anti-suit injunction. They rely heavily on the case of *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd w.o.j.), for the proposition that the correct test is the one found in *Golden Rule Insurance Co. v. Harper*, 925 S.W.2d 649, 651 (Tex.1996). Indeed, it appears the trial court in this case followed the *Golden Rule* test when it issued its injunction because the language of the injunction tracks the language of *Golden Rule.*

In *Golden Rule*, the supreme court set forth four instances in which an anti-suit injunction is appropriate: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *See id.* at 651. The context out of which this test arose was the trial court's prejudgment plenary power to adjudicate the case, not its limited power *after* judgment has been rendered and become final. Nothing in *Golden Rule* addresses the appropriateness of the test when a trial court's jurisdictional power is limited to the enforcement of its final judgment, and we note that the Texas Supreme Court has never applied the *Golden Rule* test to a post-judgment situation. Nonetheless, the court in *Bridas* applied the *Golden Rule* test to affirm an anti-suit injunction issued by a trial court after its plenary power had expired. *Bridas* offers no explanation of how a trial court's limited power to enforce its final judgment could be legitimately expanded beyond that well-defined scope.

In our jurisprudence, there is a significant and important difference between a trial court's plenary power to reach a final judgment and its more limited power to enforce its judgment once final. Under *Golden Rule*, a trial court, in the ex-

ercise of its plenary power, can issue an anti-suit injunction only if it will serve at least one of the *Golden Rule* purposes. *See id.* Each of those purposes reflects, directly or indirectly, the recognized need of a trial court to govern the litigation before it to the end that it may render a final judgment disposing of all issues pending between the parties. Once a judgment becomes final, however, the *Golden Rule* purposes no longer serve this need. Instead, a different need arises. A trial court, even though its post-plenary jurisdiction is limited, must be empowered to "cause its judgments and decrees to be carried into execution." *See* Tex.R. Civ. P. 308. Thus, once a trial court has only post-final judgment jurisdiction, the sole purpose an anti-suit injunction may serve, as contrasted with the four *Golden Rule* purposes, is to prevent another suit from interfering with the enforcement of the trial court's judgment. *See Milam*, 163 S.W. at 578. Because the *Golden Rule* test is applicable only for anti-suit injunctions issued while a trial court retains plenary jurisdiction, we decline to follow *Bridas's* method of analyzing whether the trial court abused its discretion in rendering a postjudgment anti-suit injunction.

■ The final judgment at issue in this case grants Panda the right to recover approximately $3.5 million from the Dallas defendants. Even assuming the Dallas defendants are correct in their assertion that Panda is attempting to relitigate issues finally decided in the judgment by attempting to collect the default judgment from them in Johnson County, we perceive no direct effect the Johnson County action has on the Dallas court's judgment. The judgment and the rights of the parties thereunder are as enforceable now as they were before the new pleadings were filed in Johnson County. To the extent the

Dallas defendants are concerned about protracted litigation and conflicting judgments, their potential remedy lies in the Johnson County trial court. *See Holloway,* 767 S.W.2d at 684; *Dixon,* 365 S.W.2d at 923. Because the Johnson County action has no direct effect on the enforcement of the Dallas judgment, the trial court abused its discretion in granting the anti-suit injunction.

We reverse the trial court's order and dissolve the anti-suit injunction.