Robert **ORTIZ** and R. Anaicka
Ortiz, Appellants,

v.

**LEGAL CONCIERGE, INC.,** Appellee.

No. 05–07–00692–CV.

Court of Appeals of Texas,
Dallas.

May 16, 2008.

R. Anaicka Ortiz, Law Office of R. Anaicka, Katy, for Appellants.

Brian Anthony Colao, Penelope Brobst Blackwell, Greenberg Traurig, L.L.P., Mark McPeak, Dallas, for Appellee.

Before Justices MORRIS, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

In this accelerated, interlocutory appeal, appellants Robert Ortiz and R. Anaicka Ortiz present five issues challenging the trial court's order granting a temporary anti-suit injunction in favor of appellee Legal Concierge, Inc. ("LCI"). Appellants contend the trial court erred in granting the anti-suit injunction because appellants were not served with citation as required pursuant to Texas Rule of Civil Procedure 686. Further, appellants assert the trial court abused its discretion in granting the injunction at issue because: (1) the pleadings were insufficient; (2) there was no threat to the trial court's jurisdiction and no multiplicity of suits, and any ruling in another court would not interfere with the trial court's orders; and (3) the injunction was not legally or factually supported by evidence. In addition, appellants argue the order granting the anti-suit injunction is overly broad and ambiguous.

Based on the analysis below, we conclude the trial court abused its discretion by granting the challenged temporary anti-suit injunction because, on this record, the action sought to be enjoined had no direct effect on enforcement of a prior judgment of the trial court. Appellants' third issue is decided in their favor. We need not reach appellants' other issues. We reverse the trial court's order and dissolve the temporary anti-suit injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

LCI is in the business of providing litigation support services. The parties do not dispute that Robert Ortiz, a litigation support consultant, signed an independent contractor agreement with LCI in August 2004. That agreement contained provisions restricting solicitation by Mr. Ortiz of customers, clients, vendors, or distributors of LCI, and solicitation or employment by Mr. Ortiz of persons employed by LCI, until "the date that is two years after the term of this agreement ends."

On December 26, 2005, Mr. Ortiz gave written notice of termination of his independent contractor agreement with LCI. On January 30, 2006, LCI filed this suit in the 44th District Court of Dallas County, Texas (the "trial court"), against a group of defendants that included appellants.[1] Pursuant to the trial court's March 31, 2006 "Agreed Order of Permanent Injunction and Dismissal With Prejudice" (the "Agreed Injunction"), defendants were restricted from sharing certain information pertaining to LCI or soliciting certain clients or employees of LCI. The Agreed Injunction specifically provided, in part, "Defendants shall be permitted to solicit

1. The following were named as defendants in LCI's January 30, 2006 petition: Robert Ortiz, Robin Murray, and R. Anaicka Ortiz, individually; Robert Ortiz, Robin Murray, and R. Anaicka Ortiz d/b/a R & R Services; and Robert Ortiz, Robin Murray, and R. Anaicka Ortiz d/b/a Technosource.

for employment Ron Nicholson, Cash Jacobson and/or Derek Palisoul, if an [sic] only if they first resign from, or otherwise terminate any existing employment or independent contractor agreement with, LCI."

On September 21, 2006, Mr. Ortiz filed cause number 2006–59807 in the 129th Judicial District Court of Harris County, Texas (the "Harris County lawsuit"), against LCI and its president, Lisa Cain. In that action, which was based on LCI's alleged failure to remove from its website an "appreciation letter" referring to Mr. Ortiz, claims were asserted for: (1) "invasion of privacy—appropriation of name"; (2) statutory damages pursuant to the Theft Liability Act, section 134.005(a)(1) of the Texas Civil Practice and Remedies Code; and (3) conversion.

LCI filed a motion for contempt in the trial court on November 7, 2006, asserting Mr. Ortiz had violated the terms of the Agreed Injunction by improperly attempting to solicit Jacobson for employment. Among the exhibits attached to LCI's motion for contempt was a November 3, 2006 affidavit of Jacobson respecting "solicitations" by Mr. Ortiz from June 2006 through August 2006. In January 2007, Mr. Ortiz filed a first amended petition in the Harris County lawsuit,[2] adding Jacobson as a defendant and asserting claims against LCI, Cain, and Jacobson based on Jacobson's relationship with LCI and Cain. Specifically, Mr. Ortiz asserted claims in his first amended petition for: (1) "invasion of privacy—appropriation of name"; (2) conversion; (3) theft; (4) aiding and abetting unlawful acts; (5) civil conspiracy; (6) tortious interference with ongoing and prospective business relationships; (7) misappropriation of trade secrets; and (8) unfair competition.

On March 6, 2007, the trial court granted LCI's motion for contempt and ordered Mr. Ortiz to pay a "monetary sanction in

---

2. Mr. Ortiz's first amended petition included, in addition to all facts alleged in his original petition, the following allegations:

14. In December 2004 Mr. Ortiz began training Michael Cash Jacobson in litigation support, videography and other technology services. Mr. Jacobson had no training or experience in this field before Mr. Ortiz trained him. Mr. Jacobson worked with Mr. Ortiz and took projects from him for months. Mr. Ortiz promoted Mr. Jacobson and helped him develop business relationships with others in the industry. Mr. Jacobson first worked for Lisa Cain and LCI through Mr. Ortiz. Mr. Ortiz and Mr. Jacobson had an ongoing business relationship and worked to promote each other. 15. LCI and Lisa Cain have interfered with Mr. Ortiz's business relationship with Mr. Jacobson in the following was [sic]: LCI and Lisa Cain filed an affidavit in another proceeding that is clearly in bad faith and defames Mr. Ortiz. Mr. Jacobson recently began working directly with LCI and Lisa Cain despite his prior adamant comments that he would never work for Lisa Cain or LCI. Since working with LCI, the relationship was strained. Mr. Ortiz did not initially know why Mr. Jacobson's behavior had changed. Mr. Jacobson was invasive [sic] and defensive in phone calls. Mr. Jacobson began to avoid Mr. Ortiz. Then, Mr. Ortiz discovered that Mr. Jacobson was working with LCI and Lisa Cain. The circumstances between Mr. Ortiz and Mr. Jacobson has no longer supports any kind or relationship [sic]. 16. LCI and Lisa Cain and Mr. Jacobson have been working together and conspiring in an effort to bring additional fraudulent and frivolous claims against Mr. Ortiz. LCI and Lisa Cain and Mr. Jacobson have been working together to falsify fact and claims. Mr. Jacobson by his own actions has assisted LCI and Lisa Cain, including but not limited to filing and [sic] affidavit for LCI and Lisa Cain in bad faith. Mr. Jacobson was trained by Mr. Ortiz and was privy to Mr. Ortiz's protected trade secrets, business operations, and client information which Mr. Jacobson is now sharing with Mr. Ortiz's competitor, Lisa Cain and LCI, damaging Mr. Ortiz.

the amount of $5,000.00" to LCI. A motion for new trial was filed by Mr. Ortiz on March 29, 2007. On May 17, 2007, LCI filed a "Motion for Anti–Suit Injunction" in the trial court. LCI asserted defendants had: (1) "interfered with [the trial court's] jurisdiction by filing a claim arising directly from this action in a related action in Harris County"; (2) caused the filing of multiple actions and threatened to file additional multiple actions; and (3) engaged in harassing and vexatious litigation. In its motion, LCI sought an order from the trial court "enjoining Defendants from bringing or continuing to pursue any actions in any courts outside of Dallas County against LCI and its owner, Lisa Cain, or any actions based on any claims relating to the issues before this Court and this Court's orders."

On May 21, 2007, the trial court held a hearing on Mr. Ortiz's motion for new trial, followed by a hearing on LCI's motion for anti-suit injunction. In orders of that same date, the trial court denied Mr. Ortiz's motion for new trial and also granted LCI's request for an anti-suit injunction.[3] A timely notice of appeal was filed by appellants.

3. The trial court's May 21, 2007 order respecting LCI's motion, titled "Order Granting Plaintiff's Request for Anti–Suit Injunction," provided in relevant part:

The Court is therefore of the opinion that Plaintiff is entitled to an Anti–Suit Injunction based on the following findings of fact:
1. Defendants Robert Ortiz and R. Anaicka Ortiz have interfered with this Court's jurisdiction by, among other things, filing claims in the Harris County action styled *Robert Ortiz v. Legal Concierge, Inc. et al* [sic], Case No. 2006–59807 pending in the 129th Judicial District Court, Harris County, Texas (the "Harris Litigation") because: (1) this action was the first filed lawsuit among the parties and the claims should have been brought in this Court; and (2) the claims in that action arise from and are a result of actions taken in this lawsuit.
2. Defendants Robert Ortiz and R. Anaicka Ortiz have filed multiple lawsuits against LCI, its owner, Lisa Cain, and associates of Lisa Cain, needlessly increasing the cost of litigation and wasting judicial resources, contrary to public policy. Specifically, R. Anaicka Ortiz, acting on behalf [sic] Robert Ortiz, has filed two lawsuits in Harris County as a direct result of Plaintiff seeking relief from this Court, namely the Harris Litigation and a prior lawsuit styled *R. Anaicka Ortiz et. al.* [sic] *v. Legal Concierge, Inc., et al.*, Cause No. 2006–115002 filed in the 295th District Court of Harris County, Texas.
3. Defendants Robert Ortiz and R. Anaicka Ortiz have also made threats to file additional litigation against LCI and/or persons associated with LCI.
4. Based on the conduct described above and the evidence presented in support of Plaintiff's Request, it is likely that, upon full hearing on the merits, Plaintiff will prevail on its request for a permanent anti-suit injunction.
5. Based on the conduct described above, Plaintiff will suffer immediate and irreparable injury absent an injunction granting the relief set forth below.
Based on these findings of fact as applied to the applicable case law, including but not limited to [*Golden Rule Insurance Co. v. Harper*, 925 S.W.2d 649 (Tex.1996)], it is therefore:
1. ORDERED, ADJUDGED and DE-CREED that the Clerk of this Court issue a Temporary Anti–Suit Injunction to continue in effect until further order of this Court, restraining and enjoining Defendants Robert Ortiz and R. Anaicka Ortiz, their agents, servants, representatives, and any other party acting in active concert or participation with Defendants Robert Ortiz and R. Anaicka Ortiz, *proceeding with the Harris Litigation except in response to a Motion to Dismiss that action, to be filed by LCI and Lisa Cain.*
2. IT IS FURTHER ORDERED, AD-JUDGED and DECREED that the Clerk of this Court issue a Temporary Anti–Suit Injunction to continue in effect until further order of this Court, restraining and enjoining Defendants Robert Ortiz and R. Anaicka Ortiz, their agents, servants, representatives, and any other party acting in active concert or participation with Defendants Robert Ortiz and R. Anaicka Ortiz, *from bringing any actions against Lisa Cain or*

Subsequent to the filing of this appeal, but prior to oral submission before this Court, the record was supplemented to include a December 13, 2007 order of the trial court titled "Order Granting Plaintiff's Request for Modified Temporary Anti–Suit Injunction." The December 13, 2007 order contained provisions identical to those in the trial court's May 21, 2007 order respecting LCI's motion for anti-suit injunction and, in addition, provided for a bond and set a date for "trial on the merits with respect to LCI's Request for a Permanent Anti–Suit Injunction." [4]

## II. GRANTING OF TEMPORARY ANTI–SUIT INJUNCTION

We begin with appellants' third issue, in which appellants assert the trial court abused its discretion in granting LCI's motion for anti-suit injunction "when there was no threat to the courts [sic] jurisdiction and no multiplicity of suits since nothing was pending in the trial court, the trial court denied the motion for new trial, and any ruling in another court would not interfere with the trial court's orders." LCI responds that the trial court did not abuse its discretion in issuing the anti-suit injunction because LCI demonstrated appellants had: (1) filed multiple lawsuits against LCI and Cain and threatened to file additional lawsuits; and (2) interfered with the trial court's jurisdiction by making claims in the Harris County lawsuit in retaliation for LCI and Cain exercising their rights to enforce the Agreed Injunction, asserting claims against Jacobson based on affidavits he submitted to the trial court in support of LCI's motion for

contempt, and asserting a claim for tortious interference against LCI and Cain based on behavior that violated the Agreed Injunction.

### A. Standard of Review

■ In reviewing the issuance of a temporary anti-suit injunction, we utilize an abuse of discretion standard. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex.1986); *AVCO Corp. v. Interstate Sw., Ltd.*, 145 S.W.3d 257, 262 (Tex.App.-Houston [14th Dist.] 2004, no pet.). A trial court abuses its discretion if its decision is "arbitrary, unreasonable, and without reference to guiding principles." *Am. Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.*, 52 S.W.3d 337, 339 (Tex.App.-Dallas 2001, pet. dism'd w.o.j.) (quoting *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997)). In reviewing the trial court's order, we draw inferences from the evidence in the manner most favorable to the trial court's ruling. *Id.* at 339–40.

### B. Applicable Law

■ In our jurisprudence, there is a significant and important difference between a trial court's plenary power to reach a final judgment and its more limited power to enforce its judgment once final. *Panda Energy Corp. v. Allstate Ins. Co.*, 91 S.W.3d 29, 35 (Tex.App.-Dallas 2002, pet. granted, judgm't vacated w.r.m.). A trial court's plenary power generally expires thirty days after the date a final judgment is signed. *Falls County Water Control & Improvement Dist. No. 1 v. Haak*, 220 S.W.3d 92, 93–94 (Tex.App.-Waco 2007, no pet.) (citing *Lane Bank*

*LCI for causes of actions relating in any way to or arising from the claims before this Court in any other court.*
(emphasis original).

**4.** Pursuant to rules 29.5 and 29.6 of the Texas Rules of Appellate Procedure, the trial court's

December 13, 2007 "Order Granting Plaintiff's Request for Modified Temporary Anti–Suit Injunction" is considered in this appeal as the interlocutory order brought forward for submission before this Court. *See* Tex.R.App. P. 29.5, 29.6.

*Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex.2000)); Tex.R. Civ. P. 329b(d)-(e). A judgment is final "if it disposes of all pending parties and claims." *Falls County*, 220 S.W.3d at 94 (quoting *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001)). To determine whether a judgment disposes of all pending parties and claims, it may be necessary for the appellate court to look to the record in the case. *Id.* There must be some "clear indication that the trial court intended the order to completely dispose of the entire case." *Lehmann*, 39 S.W.3d at 205. Language that the case is dismissed shows finality if there are no other claims by other parties. *Id.*

◼ Prior to a final judgment, a trial court, in the exercise of its plenary power, can issue an anti-suit injunction if it will serve at least one of the following purposes: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex.1996); *see also Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex.2005); *Panda Energy*, 91 S.W.3d at 35. Each of those purposes reflects, directly or indirectly, the recognized need of a trial court to govern the litigation before it to the end that it may render a final judgment disposing of all issues pending between the parties. *Panda Energy*, 91 S.W.3d at 35. However, once a judgment becomes final, the *Golden Rule* purposes no longer serve this need. *Id.* Instead, a different need arises. *Id.* A trial court, even though its post-plenary jurisdiction is limited, must be empowered to "cause its judgments and decrees to be carried into execution." *Id.* (quoting Tex.R. Civ. P. 308). Thus, once a trial court has only post-final judgment

jurisdiction, the sole purpose an anti-suit injunction may serve, as contrasted with the four *Golden Rule* purposes, is to prevent another suit from interfering with the enforcement of the trial court's judgment. *Id.* (citing *Milam County Oil Mill Co. v. Bass*, 106 Tex. 260, 163 S.W. 577, 578 (1914) (orig. proceeding)). Accordingly, "in cases where new litigation does not directly interfere with the efficacy of a prior final judgment, a court abuses its discretion by granting injunctive relief preventing the new litigation." *Id.* at 34. *But see Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788, 795 (Tex.App.-Tyler 2007, no pet.) (applying *Golden Rule* test in analyzing whether trial court erred in issuing temporary anti-suit injunction seventeen months after order signed).

### C. Application of Law to Facts
### 1. Expiration of Trial Court's Plenary Power

◼ In this case, the March 31, 2006 Agreed Injunction provided in part, "IT IS FURTHER ORDERED, ADJUDGED and DECREED that all claims brought by any party herein, or which could have been brought by any party herein, are hereby dismissed with prejudice." (emphasis original). Although appellants do not, in their argument regarding the issue before us, specifically address the finality of the Agreed Injunction, they assert in their argument in support of their first issue on appeal that "[t]he court had entered a final judgment in March 2006." LCI does not address the finality of the Agreed Injunction in its brief before this Court. Based on the language in the Agreed Injunction dismissing all claims with prejudice, we conclude the Agreed Injunction constituted a final judgment of the trial court. *See Lehmann*, 39 S.W.3d at 205; *see also McCray v. McCray*, 584 S.W.2d 279, 281 (Tex.1979) (agreed judgment is afforded

same degree of finality as final judgment rendered at conclusion of adversary proceeding).

■ Next, we address appellants' contention that "[t]he Trial Court's plenary powers had expired when the anti-suit injunction was granted since the original order was entered in March 2006 and the March 2007 order was for enforcement of the prior order." The Agreed Injunction states it was "SIGNED AND ENTERED this 31st day of March, 2006 at 11 o'clock a.m." (emphasis original). The parties had thirty days after the date the Agreed Injunction was signed to appeal the order or file a post-judgment motion pursuant to rule 329b. *See* TEX.R.APP. P. 26.1; TEX.R. CIV. P. 329b. The record shows the parties did neither. Thus, the trial court's plenary power expired thirty days after the Agreed Injunction was signed. *See Lane,* 10 S.W.3d at 310; TEX.R. CIV. P. 329b(d)-(e). Accordingly, we conclude the trial court's May 21, 2007 "Order Granting Plaintiff's Request for Anti–Suit Injunction," and its December 13, 2007 "Order Granting Plaintiff's Request for Modified Temporary Anti–Suit Injunction" were both issued after expiration of the trial court's plenary power.

### 2. Interference With Enforcement of Trial Court's Judgment

■ LCI, specifically basing its argument on the test set forth in *Golden Rule* and followed in *Gonzalez,* asserts that in its motion for anti-suit injunction and at the hearing on that motion,[5] it demonstrated: (1) "the [Harris County lawsuit] was interfering with the district court's juris-

diction over the [Agreed Injunction] and the contempt order," and (2) "the injunction was necessary to prevent multiple litigation." According to LCI, the filing of the Harris County lawsuit was "nothing more than retaliation" against LCI, Cain, and Jacobson, and such behavior should be addressed by the trial court as part of its "continuing jurisdiction" over the parties subject to the Agreed Injunction. LCI contends the Harris County lawsuit "did directly interfere with the [trial court's] jurisdiction and power to enforce its orders" because the claims in the Harris County lawsuit were "clearly based upon actions taken in the [trial court]." Further, LCI argues the claim in the Harris County lawsuit against LCI and Cain for "tortious interference with ongoing and prospective business relationships" was either: (1) an attempt to assert a claim against LCI in retaliation for LCI's bringing the original underlying action against appellants, or (2) an attempt by Mr. Ortiz, in violation of the Agreed Injunction, to "continue an 'ongoing business relationship' with Mr. Jacobson which LCI 'interfered' with by filing the Motion for Contempt." In either event, LCI contends, "such behavior was clearly contrary to the Agreed Injunction and the assertion of such claim in a court other than the [trial court] interfered with the [trial court's] jurisdiction over its Agreed Injunction, as well as its Contempt Order."

Appellants assert that "[c]ourts are divided as to whether the Golden Rule test applies only during the trial court's plenary power or applies after loss of plenary

---

5. Appellants assert in their argument in support of their fifth issue that "[t]here was no evidence put on whatsoever at the hearing for anti-suit injunction." LCI argues the trial court properly considered as evidence the attachments to the motion for anti-suit injunction, the pleadings on file, and the statements made by counsel at the hearing. For purposes of this opinion, we assume, without deciding, that the attachments to LCI's motion for anti-suit injunction, the pleadings on file, and the statements made by counsel at the hearing were properly considered by the trial court.

power." Appellants argue this Court held in *Panda Energy* that the *Golden Rule* test "does not apply once the trial court's plenary powers have expired." Appellants contend the trial court abused its discretion by granting the anti-suit injunction at issue because the Harris County lawsuit "had no direct effect on the original judgment and agreed permanent injunction in the Dallas matter, nor on the order finding of contempt [sic]." Further, appellants argue that if the *Golden Rule* test is applicable, LCI failed to prove any of the four circumstances that could support an anti-suit injunction.

In the order granting the temporary anti-suit injunction at issue, the trial court specifically found appellants "have interfered with this Court's jurisdiction by, among other things, filing claims in the [Harris County lawsuit] because: (1) this action was the first filed lawsuit among the parties and the claims should have been brought in this Court; and (2) the claims in that action arise from and are a result of actions taken in this lawsuit." In addition, the trial court found appellants had "filed multiple lawsuits against LCI, its owner, Lisa Cain, and associates of Lisa Cain, needlessly increasing the cost of litigation and wasting judicial resources, contrary to public policy" and "made threats to file additional litigation against LCI and/or persons associated with LCI." The trial court based its order on its findings of fact "as applied to the applicable case law, including but not limited to *Golden Rule*." However, as we concluded above, LCI's motion for anti-suit injunction was filed after expiration of the trial court's plenary power. Therefore, the *Golden Rule* test is not applicable to this case. *See Panda Energy,* 91 S.W.3d at 35. Rather, we must determine whether the Harris County lawsuit "interfer[ed] with the enforcement of the trial court's judgment." *Id.*

The Agreed Injunction included provisions restricting appellants from sharing certain information pertaining to LCI or soliciting certain clients or employees of LCI. Following LCI's filing of a motion for contempt based on alleged solicitation of Jacobson by Mr. Ortiz in violation of the Agreed Injunction, Mr. Ortiz amended his petition in the Harris County lawsuit to include claims based on Jacobson's November 3, 2006 affidavit and the business relationship of LCI, Cain, and Jacobson. On March 6, 2007, the trial court enforced the Agreed Injunction by granting LCI's motion for contempt. The Harris County lawsuit did not address the relief provided by the Agreed Injunction or the trial court's contempt order, nor did it seek to relitigate issues previously decided by the trial court. *See id.* at 34.

Although LCI argues that appellants' behavior was "clearly contrary to the Agreed Injunction" because the claim against LCI and Cain in the Harris County lawsuit for "tortious interference with ongoing and prospective business relationships" constituted an attempt by Mr. Ortiz, in violation of the Agreed Injunction, to continue an "ongoing business relationship" with Jacobson, the Agreed Injunction contained no provision enjoining Mr. Ortiz from maintaining an "ongoing business relationship" with Jacobson. Rather, the Agreed Injunction provided that appellants "shall be permitted to solicit for employment Ron Nicholson, Cash Jacobson and/or Derek Palisoul, if an [sic] only if they first resign from, or otherwise terminate any existing employment or independent contractor agreement with, LCI." In his first amended petition in the Harris County lawsuit, Mr. Ortiz alleged in part, "Mr. Ortiz and Mr. Jacobson had an ongoing business relationship and worked to promote each other." Mr. Ortiz asserted LCI and Cain interfered with that business relationship in the following ways:

LCI and Lisa Cain filed an affidavit in another proceeding that is clearly in bad faith and defames Mr. Ortiz. Mr. Jacobson recently began working directly with LCI and Lisa Cain despite his prior adamant comments that he would never work for Lisa Cain or LCI. Since working with LCI, the relationship was strained. Mr. Ortiz did not initially know why Mr. Jacobson's behavior had changed. Mr. Jacobson was invasive [sic] and defensive in phone calls. Mr. Jacobson began to avoid Mr. Ortiz. Then, Mr. Ortiz discovered that Mr. Jacobson was working with LCI and Lisa Cain. The circumstances between Mr. Ortiz and Mr. Jacobson has no longer supports any kind or relationship [sic]. The record does not show that the "ongoing business relationship" with which Mr. Ortiz alleges interference involved solicitation of Jacobson for employment by Mr. Ortiz, or that such relationship otherwise violated the Agreed Injunction.

Further, LCI did not explain in the trial court, nor does it explain before this Court, how the Harris County lawsuit, even if filed as retaliation, "interfer[ed] with the enforcement of the trial court's judgment." *See id.* at 35. The Agreed Injunction and the rights of the parties thereunder remained as enforceable after the filing of the Harris County lawsuit as they were before that lawsuit was filed. *Id.*

Once a trial court has only post-final judgment jurisdiction, the sole purpose an anti-suit injunction may serve is to "prevent another suit from interfering with the enforcement of the trial court's judgment." *Id.* "[I]n cases where new litigation does not directly interfere with the efficacy of a prior final judgment, the court abuses its discretion by granting injunctive relief preventing the new litigation." *Id.* at 34. Here, the trial court made no finding, and

the record does not show, that the Harris County lawsuit interfered with enforcement of the Agreed Injunction. Accordingly, the trial court abused its discretion in granting the temporary anti-suit injunction. *See id.* at 35. Appellants' third issue is decided in their favor.

## III. CONCLUSION

We conclude the trial court abused its discretion by granting the temporary anti-suit injunction at issue because, on this record, the Harris County lawsuit did not directly interfere with the efficacy of a prior final judgment of the trial court. Because we decide appellants' third issue in their favor, we need not reach appellants' remaining issues. We reverse the trial court's order and dissolve the temporary anti-suit injunction.