**Affirmed as Modified and Opinion filed April 30, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00062-CV

## MICHAEL LEE WYRICK A/K/A MIKE WYRICK AND GREGORY MICHAEL RUHNKE A/K/A GREG RUHNKE, Appellants

## V.

## BUSINESS BANK OF TEXAS, N.A., Appellee

**On Appeal from the 200th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-16-002323**

### O P I N I O N

Two individual guarantors of a $3 million promissory note appeal the trial court's summary judgment enforcing the guaranty in favor of a bank and dismissing the guarantors' tort claims. In their first two issues, the note guarantors, appellants Michael Lee Wyrick and Gregory Michael Ruhnke, contend the trial court erred in granting summary judgment to the bank, appellee Business Bank of Texas, N.A., (the "Bank"), because legally sufficient evidence supports their contract defenses

(fraudulent inducement, negligent misrepresentation, mutual mistake, and equitable estoppel) and affirmative counterclaims (fraud, tortious interference, negligence, and gross negligence). We conclude that appellants lack standing to assert some of their counterclaims and that the summary judgment evidence does not raise a fact issue as to the remainder of their counterclaims and their contract defenses.

In their third and fourth issues, appellants challenge the trial court's permanent anti-suit injunction, which bars appellants and others, including a company they own, Barquero Energy Services, LLC ("Barquero"), from initiating or proceeding with any related claims they may have against the Bank in any other forum. After careful review of the record, we conclude the trial court erred in granting the anti-suit injunction, and we modify the judgment to dissolve the injunction. We otherwise affirm the trial court's judgment as modified.

## Background

Read in the light most favorable to appellants,[1] the record reveals the following pertinent background facts. The Bank loaned $3,000,000 to Barquero for investment in a salt water disposal well (the "Barquero SWD"), and Barquero signed a promissory note to the Bank in that amount. The note promising the loan's repayment specifies as "security for payment" (1) "an Assignment of Leases" covering the leasehold interest in the Barquero SWD and (2) an assignment of interest in Barquero stock and three life insurance policies. Wyrick signed the note as managing member of Barquero. The Bank did not sign the note, though appellants contend the Bank drafted the note's terms. The Bank's representatives, Ed Lette and Ray Bearden, assured Wyrick and Ruhnke, another Barquero member, that the loan would be secured by a valid security interest in the Barquero SWD lease. By a

---

[1] *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

2

separate document signed the same day as the note, the Bank and Barquero agreed to arbitrate all claims, disputes, and controversies between and among them arising out of or relating to the loan.

Each of the appellants signed an agreement titled "Unlimited, Unconditional Guaranty," which provides in relevant part:

> 1. **Guarantor unconditionally, irrevocably, and absolutely . . . guarantees** to Lender . . . that (a) the principal of and interest on, and attorneys' fees provided in, the Note . . . will be promptly paid when due in accordance with the provisions thereof . . . ; (b) all covenants and agreements of Borrower contained in the Note, the Assignment, the Debt, and any other instrument, . . . will be duly and promptly observed and performed and (c) all additional amounts owing or which hereafter become owing by Borrower under the terms of the Note, the Assignment, the Debt, and any other instrument . . . will be promptly paid when due.
>
> 2. **The obligations of Guarantor** shall be performable without demand of Lender and shall be unconditional irrespective of the genuineness, validity, regularity or enforceability of the Note, the Assignment, or any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or a guarantor, and Guarantor hereby waives the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Unconditional Guaranty, and agrees that the obligations of Guarantor **shall not be affected by any circumstances, whether or not referred to in this Unconditional Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or guarantor**. Specifically, to the extent this Unconditional Guaranty is governed by the laws of the State of Texas, the Guarantor waives all rights and remedies accorded by law to guarantors and sureties and further waives the benefits of any right of discharge under Article 34 of the Texas Business and Commerce Code[2] and any other rights of sureties and guarantors thereunder, together with all rights and

---

[2] Former chapter 34 of the Business and Commerce Code has been re-codified as chapter 43 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code §§ 43.001-.005.

remedies under Texas Property Code Sections 51.003 to 51.005, as amended. Without limiting the generality of the foregoing, the **Guarantor hereby waives** diligence, presentment, demand of payment, protest, all notices (whether of nonpayment, intention to accelerate, acceleration, dishonor, protest or otherwise) with respect to the note, notice of acceptance of this Unconditional Guaranty and of the incurring by borrower of any of the obligations hereinbefore mentioned, all demands whatsoever, and **all rights to require Lender to (a) proceed against the borrower; (b) proceed against or exhaust any collateral held by Lender to secure the payment of the indebtedness or (c) pursue any other remedy it may now or hereafter have against the borrower.**

3. Guarantor hereby agrees that, at any time or from time to time, without notice to Guarantor and without affecting the liability of Guarantor, . . . any security for the Debt may be modified, exchanged, surrendered or otherwise dealt with or additional security may be pledged or mortgaged for the Debt.

(Emphases added).

Appellants acknowledge signing the guaranties but contend the Bank assured them that it would execute on the collateral, rather than pursue the guaranties, in the event of Barquero's default on the note.

Barquero defaulted on the note. However, contrary to what appellants allegedly were led to believe through the Bank's assurances, the Bank did not foreclose on the Barquero SWD but rather sought to enforce the personal guaranties. Appellants refused to honor their guaranties. According to appellants, the Bank was unable to foreclose on the collateral due to a problem of its own making: the Bank failed to secure all necessary leasehold assignments and landowner consent to the assignments, as contemplated by the note. Further, appellants contend, the Bank began operating as if it were the owner of the Barquero SWD, which interfered with appellants' ability to sell the well for its true value or to attract investors. Appellants

4

claim that the Bank's actions caused them to lose potential investors and buyers, and negatively impacted their credibility with vendors.

The Bank sued appellants in Travis County for breach of their personal guaranties.[3] Appellants answered with a general denial and asserted affirmative defenses of fraudulent inducement and negligent misrepresentation. They later amended their answers to also plead mutual mistake and equitable estoppel. Appellants filed counterclaims against the Bank, Lette, and Bearden, alleging fraud, tortious interference with prospective contracts, negligence, and gross negligence. Barquero asserted similar cross-claims against the Bank, but Barquero and the Bank agreed to arbitrate Barquero's claims pursuant to the arbitration agreement between them. The trial court signed an agreed order compelling all of Barquero's claims against the Bank to arbitration, and severing and abating those claims. Barquero nonsuited its cross-claims that were subject to the arbitration order.

After the parties agreed to arbitrate Barquero's claims in Travis County, Barquero Fund I, LLC ("Barquero Fund")—an entity owned by Barquero and ostensibly controlled by appellants—filed suit against the Bank in Dimmit County, asserting claims similar if not identical to those Barquero had asserted against the Bank in Travis County. The Bank filed a motion for sanctions and for an anti-suit injunction in Travis County when it discovered Barquero Fund's lawsuit in Dimmit County.

Meanwhile, in the Travis County lawsuit, the Bank, Lette, and Bearden sought summary judgment against appellants in two similar motions on both traditional and

---

[3] The Supreme Court of Texas transferred this case to our court from the Third Court of Appeals. *See* Tex. Gov't Code § 73.001. We are unaware of any conflict between Third Court of Appeals precedent and that of this court on any relevant issue, and the parties cite none. *See* Tex. R. App. P. 41.3.

5

no-evidence grounds.[4]  In the traditional portion of the motions, the movants asserted that:  (1) appellants are liable for breach of their guaranties; (2) appellants' affirmative defenses of fraudulent inducement and negligent misrepresentation fail for lack of justifiable reliance; (3) the defense of mutual mistake does not void the guaranties because appellants assumed the risk of any failure of collateral;[5] (4) appellants lack standing to bring counterclaims because those claims belong to Barquero; and (5) appellants' counterclaims fail because the damages are speculative.  In the no-evidence portion of the motions, the movants argued that appellants had no evidence of any required elements of their fraud, tortious interference, negligence, or gross negligence counterclaims.

Appellants filed responses to each summary judgment motion, asserting that they were not liable on the guaranties due to the Bank's purported misrepresentations concerning the loan collateral—i.e., that the Bank had or would obtain a valid security interest in the Barquero SWD leasehold.  Appellants also asserted that they had standing to assert their counterclaims, that their damages were based on reasonable certainty, and that they had substantial evidence supporting their fraud, tortious interference, and negligence-based claims.

The trial court granted partial summary judgment in favor of the Bank on Ruhnke's guaranty and denied Ruhnke's motion to reconsider.  The court later granted summary judgment in the Bank's favor on Wyrick's guaranty and signed a

---

[4] According to the Bank, "The motions against the two guarantors are virtually identical as they are based on the same guaranties and the same law.  They differ only in that Wyrick made certain admissions that Ruhnke did not."

[5] The Bank asserted this ground in its motion against Wyrick only because, at the time the Bank filed its motion against Ruhnke, appellants had not yet pleaded mutual mistake.  However, Ruhnke later asserted a mutual mistake defense and the parties briefed it in the trial court.  On appeal, the Bank does not argue that Ruhnke failed to raise mutual mistake, and we presume the issue is properly before us as to both appellants.

final judgment, which incorporated the partial summary judgment against Ruhnke. The trial court awarded the Bank damages of $3 million plus interest, as well as attorney's fees and costs (including conditional appellate fees). The trial court also dismissed with prejudice appellants' counterclaims against the Bank and granted summary judgment in favor of Lette and Bearden.[6]

The day before it signed the judgment, the trial court granted the Bank's motion for a permanent anti-suit injunction, the terms of which the court expressly incorporated into the judgment. The anti-suit injunction barred appellants, Barquero, Barquero Fund, and all those acting in concert with them from initiating or proceeding with any related claims against the Bank in Dimmit County or any other county except Travis County. We discuss the injunction's terms in more detail below in connection with appellants' third and fourth issues.

This appeal timely followed.

<h2 align="center">The Guaranties</h2>

In their first two issues, appellants challenge the trial court's summary judgments in the Bank's favor.

## A.   Standard of Review

We review de novo a trial court's decision to grant summary judgment. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam). We consider the evidence in the light most favorable to the non-movant, indulging reasonable inferences and resolving doubts in the non-movant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). We credit evidence favorable to the non-movant if reasonable fact finders could, and we disregard

---

[6] Appellants do not challenge the judgment in favor of Lette and Bearden.

contrary evidence unless reasonable fact finders could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

In a no-evidence motion for summary judgment, the movant asserts that no evidence exists of one or more essential elements of the claims for which the non-movant bears the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The non-movant then must present more than a scintilla of probative evidence that raises a genuine issue of material fact supporting each element contested in the motion. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 & n.4 (Tex. 2002). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). The non-movant "is 'not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements.'" *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam) (quoting Tex. R. Civ. P. 166a(i) cmt.-1997). Unless the non-movant raises a genuine issue of material fact, the trial court must grant summary judgment. Tex. R. Civ. P. 166a(i). But if the non-movant satisfies its burden of production on the no-evidence motion, then the court cannot properly grant summary judgment. *See Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

A traditional summary judgment movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Fielding*, 289 S.W.3d at 848. When a plaintiff moves for summary judgment on its cause of action, it must conclusively prove all essential elements of its claim as a matter of law. *Leonard v. Knight*, 551 S.W.3d 905, 909 (Tex. App.—

Houston [14th Dist.] 2015, no pet.); *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *see also Appleton v. Appleton*, 76 S.W.3d 78, 83 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The non-movant has no burden to respond to a motion for summary judgment unless the movant conclusively establishes each element of its cause of action as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999).

If the movant produces evidence conclusively establishing its right to summary judgment, then the burden of proof shifts to the non-movant to present grounds for avoiding summary judgment, *Home Loan Corp. v. JPMorgan Chase Bank, N.A.*, 312 S.W.3d 199, 205 (Tex. App.—Houston [14th Dist.] 2010, no pet.), including evidence sufficient to raise a genuine issue of material fact, if the non-movant so contends. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the non-movant relies on affirmative defenses to defeat summary judgment on the movant's cause of action, the non-movant must do more than merely plead the affirmative defense. *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The non-movant must produce sufficient evidence to conclusively prove or at least raise a material issue of fact as to each element of the affirmative defense. *Leonard*, 551 S.W.3d at 909-10; *see Wiggins v. Overstreet*, 962 S.W.2d 198, 200 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

In granting summary judgment to the Bank, the trial court necessarily construed the guaranties. Courts construe unambiguous guaranty agreements as any other contract, i.e., by determining the true intentions of the parties as expressed in the contract. *See Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1, 6 (Tex.

2014). We examine and consider the entire writing to determine the parties' intent. *See id.* We review de novo a trial court's construction of an unambiguous contract. *Id.* No party contends the guaranties are ambiguous.

## B.    Appellants' Affirmative Defenses

In their first issue, appellants contend the trial court erred in granting summary judgment in the Bank's favor because they raised a fact issue on their affirmative defenses of fraudulent inducement, negligent misrepresentation, mutual mistake, and equitable estoppel. Appellants do not argue that the Bank failed to establish conclusively all elements of its breach of contract claim, and they do not otherwise contest their liability under the guaranties in the event their affirmative defenses fail as a matter of law. We agree that the Bank met its initial summary judgment burden. Accordingly, appellants bore the burden to bring forward sufficient summary judgment evidence to raise a fact issue on each element of their affirmative defenses. *Leonard*, 551 S.W.3d at 909-10. As we explain, appellants either could not or did not meet this burden as to each affirmative defense.

### 1. *Fraudulent Inducement and Negligent Misrepresentation Defenses*

In their live pleading, appellants alleged that the Bank represented to them that it would obtain a valid security interest in the Barquero SWD as collateral for Barquero's note, but that the Bank failed to do so. In support of this defense, appellants alleged that the Bank's misrepresentation about the collateral was negligent or fraudulent and induced them into signing their guaranties. We begin with the fraudulent inducement defense.

10

To prevent the guaranties' enforcement based on the Bank's alleged fraudulent inducement,[7] appellants had to show among other things that they justifiably relied on the Bank's representations.[8] *JPMorgan Chase Bank, N.A. v. Orca Assets, G.P., LLC*, 546 S.W.3d 648, 653-54 (Tex. 2018); *Simulis, L.L.C. v. Gen. Elec. Cap. Corp.*, 439 S.W.3d 571, 577 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 819-20 (Tex. App.—Houston [14th Dist.] 2018, no pet. h.) (identifying reliance as element of fraudulent inducement affirmative defense). Although justifiable reliance usually presents a fact question, it may be negated as a matter of law when circumstances show that the reliance cannot be justified. *See JPMorgan Chase*, 546 S.W.3d at 654; *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424-25 (Tex. 2015) (per curiam) ("[A]s Texas courts have repeatedly held, a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms.") (citing *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)); *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858-59 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (reliance on oral

---

[7] "A contract is subject to avoidance on the ground of fraudulent inducement." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011); *see also* Tex. R. Civ. P. 94 (listing fraud as an affirmative defense).

[8] To prevail on a fraudulent-inducement defense, a party must establish the elements of fraud "as they relate to an agreement between the parties." *See Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001); *Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 819 (Tex. App.—Houston [14th Dist.] 2018, no pet. h.) (discussing fraudulent inducement as an affirmative defense). The elements of fraud are (1) a false material representation, (2) made with knowledge of its falsity or made recklessly without knowledge of its truth, and (3) intending that the misrepresentation would be acted on by the other party, where (4) the other party acts in justifiable reliance on the misrepresentation, and (5) thereby suffers injury. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Orca Assets, G.P., LLC*, 546 S.W.3d 648, 653 (Tex. 2018); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47-48 (Tex. 1998); *Tex. Black Iron*, 566 S.W.3d at 819.

11

representation that is directly contradicted by express terms of written agreement not justified as a matter of law).

Though as a traditional summary judgment movant on its breach-of-guaranty claim the Bank had no burden to negate appellants' affirmative defenses,[9] the Bank's motion challenged the element of justifiable reliance. The Bank argued pre-emptively that the guaranties' written terms contradict appellants' purported reliance on the Bank's alleged oral misrepresentation that it had perfected, or would perfect, its security interest in the Barquero SWD. Thus, the Bank contends, appellants' fraudulent inducement defense fails as a matter of law on the justifiable reliance element. We agree.

Appellants' guaranties state explicitly that appellants' obligations would be "unconditional irrespective of the genuineness, validity, regularity[,] or enforceability" of the loan or assignment of the Barquero SWD. By signing the guaranties, appellants waived "the benefit of all principles or provisions of law, statutory or otherwise" that contradict the terms of the guaranties and agreed that their obligations would not be subject to any legal or equitable discharges. Appellants further agreed that "any security for the Debt may be modified, exchanged, surrendered[,] or otherwise dealt with," and that in any event the Bank was not required to proceed first against the borrower or exhaust any collateral before enforcing the guaranties. Because the guaranties' express terms make clear that the Bank could have abandoned or "surrendered" the collateral altogether, whether the Bank actually secured the collateral or whether the collateral is actually available is immaterial. If, for example, the Bank secured the assignments of leases and then released the collateral, appellants concede they would be liable on their

---

[9] *See, e.g.*, *Leonard*, 551 S.W.3d at 909-10.

12

guaranties. The guaranties' language places the risk for any failure of collateral squarely on appellants, not the Bank. Assuming the Bank's representatives made the statements appellants attribute to them, appellants could not have relied justifiably on those statements as a matter of law because they contradict the unambiguous text of the guaranties that they admittedly read and signed. *See, e.g.*, *JPMorgan Chase Bank*, 546 S.W.3d at 659-60; *Nat'l Prop. Holdings*, 453 S.W.3d at 424-26; *DRC Parts & Accessories*, 112 S.W.3d at 858-59.

Wyrick's argument on reliance fails for an additional reason. A party may not rely justifiably on a fraudulent misrepresentation when "he knows that it is false or its falsity is obvious to him." *Triesch v. Triesch*, No. 03-15-00102-CV, 2016 WL 1039035, at *2 (Tex. App.—Austin Mar. 8, 2016, no pet.) (mem. op.). This rule applies to Wyrick because at the time he signed his guaranty, he knew that the Bank did not have a valid assignment of the lease: "I know that for a fact because the [Bank representatives] told me they were going to have to go to Mr. B[]aty to get that. And I arranged for that to happen." Thus, Wyrick could not have relied justifiably on the Bank's alleged misrepresentations about the collateral to avoid his guaranty obligations.

Appellants assert that the guaranties' "unconditional" language is "overly expansive and insufficient to shift the risk that the Bank would fail to secure the collateral," relying on the Dallas Court of Appeals' opinion in *Orca Assets, G.P., L.L.C. v. JPMorgan Chase Bank, N.A.*, 542 S.W.3d 591, 603-06 (Tex. App.—Dallas 2015), *reversed by JPMorgan Chase Bank*, 546 S.W.3d at 650.[10] But the Supreme Court of Texas has rejected as "too strict to be workable" the requirement that "both the contractual clause and the extra-contractual representation it supposedly

---

[10] Appellants also rely on *Italian Cowboy*, 341 S.W.3d 323, but, "because this is a direct-contradiction case and not a waiver case, it falls outside *Italian Cowboy*'s purview." *JPMorgan Chase*, 546 S.W.3d at 654 n.1.

contradicts must explicitly speak to the same subject matter with sufficient specificity to correct and contradict the prior oral representation." *See JPMorgan Chase*, 546 S.W.3d at 659. This argument does not support reversal.

Appellants contend further that, in addition to making the oral representations regarding the collateral, the Bank also falsely represented in the promissory note itself that "the Loan was secured by the Assignment of Leases." This argument fails for at least two reasons: (1) the note does not clearly state that the contemplated assignment of leases had been secured; and (2) the Bank did not sign the note. Appellants cite no other evidence or authority establishing that the terms of a document the Bank did not sign may be considered as the Bank's representations.

Negligent misrepresentation, to the extent it is available as an affirmative defense in these circumstances,[11] shares with fraud the common element of justifiable reliance. *See, e.g.*, *JPMorgan Chase Bank*, 546 S.W.3d at 653-54; *Simulis*, 439 S.W.3d at 577 ("Reliance is an element of Simulis's claims for fraudulent misrepresentation, fraud by nondisclosure, and negligent misrepresentation . . . ."). Accordingly, appellants' failure to present evidence of justifiable reliance negates this defense as well.

We conclude that appellants failed in their burden to bring forward sufficient summary judgment evidence to raise a fact issue on the justifiable reliance element of their fraudulent inducement and negligent misrepresentation affirmative defenses.

---

[11] We presume without deciding that a negligent-misrepresentation theory may be asserted as an affirmative defense to defeat an otherwise enforceable contract, though some courts have stated otherwise. *See Chavez v. Kansas City S. Ry. Co.*, 518 S.W.3d 33, 48-49 (Tex. App.—San Antonio 2015) (explaining that "there is no affirmative defense of negligent misrepresentation in avoidance of a contract"), *rev'd on other grounds by* 520 S.W.3d 898 (Tex. 2017); *Soto v. S. Life & Health Ins. Co.*, 776 S.W.2d 752, 756 (Tex. App.—Corpus Christi 1989, no writ) ("[F]alse statements which are made negligently, carelessly or by mistake are not sufficient to avoid a life insurance policy where the defense is based upon the insured's misrepresentation of a material fact.").

Thus, the trial court did not err in rejecting those defenses and granting summary judgment in the Bank's favor. *See Leonard*, 551 S.W.3d at 909-10.

### 2. *Mutual Mistake Defense*

Appellants pleaded that the guaranties are unenforceable due to mutual mistake. "A mutual mistake of fact occurs when the parties to an agreement have a common intention, but the written agreement does not accurately reflect that intention due to a mutual mistake." *N.Y. Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 212 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). The elements of mutual mistake are: (1) a mistake of fact; (2) held mutually by the parties; (3) which materially affects the agreed-on exchange. *Id.*; *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Fort Worth 2008, pet. dism'd).

According to appellants' answer, the alleged mutual mistake was that "neither Ruhnke nor Wyrick nor the Bank was aware that there was no collateral." The Bank challenged this defense in its summary judgment motion, asserting that appellants assumed the risk of any mistake under the guaranties' terms. A "person who intentionally assumes the risk of unknown facts cannot escape a bargain by alleging mistake or misunderstanding." *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 491 (Tex. 2005). In *Geodyne*, the Supreme Court of Texas rejected a mutual-mistake defense based on section 154 of the Restatement, which provides that a party bears the risk of a mistake when the risk of the mistake is allocated to that party by agreement. *See id.* (citing Restatement (Second) of Contracts § 154 (1981)); *Berry v. Encore Bank*, No. 01-14-00246-CV, 2015 WL 3485970, at *7-8 (Tex. App.—Houston [1st Dist.] June 2, 2015, pet. denied) (mem. op.).

Here, appellants assumed the risk that the Bank's acts or omissions would leave the Bank without collateral, or that the Bank could enforce the guaranties

15

without first proceeding against any secured collateral, because all parties agreed appellants would be liable on the guaranties "irrespective of the genuineness, validity, regularity[,] or enforceability of the Note, the Assignment, or any other circumstance which might otherwise constitute a legal or equitable discharge." *See* Restatement (Second) of Contracts § 154(a) (explaining that a party bears the risk of a mistake when "the risk is allocated to him by agreement of the parties"); *Berry*, 2015 WL 3485970, at *7-8 (quoting Restatement (Second) of Contracts § 154 cmt. b; "Just as a party may agree to perform in spite of impracticability or frustration that would otherwise justify his non-performance, he may also agree, by appropriate language or other manifestations, to perform in spite of mistake that would otherwise justify his avoidance."). Appellants further agreed that ". . . at any time or from time to time, without notice to Guarantor and without affecting the liability of Guarantor, . . . **any security for the Debt may be** modified, exchanged, **surrendered**[,] or otherwise dealt with or additional security may be pledged or mortgaged for the Debt." (Emphasis added). If it is true that appellants and the Bank mistakenly presumed the existence and enforceability of collateral, appellants expressly assumed the risk that they would have to perform their guaranties even if the collateral was unperfected, unenforceable, or, for that matter, surrendered.

Thus, appellants failed in their burden to prove a mistake of fact held mutually by the parties and thus did not raise a fact issue on their mutual mistake affirmative defense. The trial court did not err in granting the Bank's motion as to this defense. *See Geodyne*, 161 S.W.3d at 491; *Berry*, 2015 WL 3485970, at *8.

3. *Equitable Estoppel Defense*

In response to the Bank's summary judgment motion, appellants made no argument and presented no evidence that their equitable estoppel affirmative defense precluded summary judgment in the Bank's favor. *See Leonard*, 551 S.W.3d at 909-

10. Therefore, we do not consider this affirmative defense as grounds for reversing the summary judgment. *See, e.g.*, *Tex. Black Iron*, 566 S.W.3d at 821 (refusing to consider estoppel affirmative defense when non-movant did not raise it in summary judgment response); *see also* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

* * *

For these reasons, we conclude that the trial court did not err in granting summary judgment in the Bank's favor by rejecting appellants' affirmative defenses. We overrule appellants' first issue.

## C.    Appellants' Counterclaims

In issue two, appellants challenge the summary judgment in the Bank's favor on their counterclaims of fraud/fraud by nondisclosure, tortious interference with prospective contracts, negligence, and gross negligence. The factual bases for appellants' counterclaims, as pleaded, revolve around the Bank's alleged conduct occurring after the loan's default. According to appellants' first amended counterclaim, the Bank knew that it did not have an enforceable lien against the Barquero SWD because it had no assignments or agreements with the owners. Largely for this reason, appellants allege, the Bank abandoned efforts to foreclose on the Barquero SWD for fear of conducting a wrongful foreclosure and increased its efforts to sell the SWD so it could be repaid. To this end, appellants claim, the Bank contacted unnamed investors, potential purchasers, and vendors, with the message that the Bank was going to foreclose, that Barquero, Wyrick, and Ruhnke would lose their interest in the Barquero SWD, and that all the negotiations should be with the Bank. These alleged representations by the Bank form the basis of appellants' counterclaims for fraud and fraud by nondisclosure, as well as tortious

17

interference with prospective contracts, and allegedly injured the Barquero SWD's value.

The Bank sought a no-evidence summary judgment as to each counterclaim. The Bank identified each element of appellants' counterclaims and argued that appellants lacked evidence to support all elements. *See* Tex. R. Civ. P. 166a(i). We must sustain a no-evidence point when (a) there is a complete absence of evidence of a vital fact; (b) we are barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a scintilla; or (d) the evidence conclusively establishes the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 816; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

The Bank also moved for traditional summary judgment as to each counterclaim, arguing that (1) appellants lack standing to assert them and (2) appellants' alleged damages are too speculative.

The trial court's judgment does not specify the grounds on which it ruled for the Bank. The Bank's challenge to appellants' standing invokes subject-matter jurisdiction, which is essential to the court's authority. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Because standing is never presumed, we address that issue first and apply de novo review. *See Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015); *Tex. Ass'n of Bus.*, 852 S.W.2d at 444-45.

1.    *Standing*

Standing is a constitutional prerequisite to maintaining suit in either federal or state court. *Sneed*, 465 S.W.3d at 179-80. A court has no jurisdiction over a claim made by a party who lacks standing to assert it. *Gribble v. Layton*, 389 S.W.3d 882, 886 (Tex. 2012). Under Texas law, a party has standing if the party has suffered a particular injury and there exists a real controversy between the parties that will be

18

determined by the judicial declaration sought. *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2011); *Parham Family Ltd. P'ship v. Morgan*, 434 S.W.3d 774, 785 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Appellants bring the counterclaims at issue in their individual capacities. To establish standing, appellants must affirmatively show, through pleadings and other evidence relevant to the jurisdictional inquiry, a distinct interest in their counterclaims such that the Bank's alleged actions have caused them some particular injury. *See Jessen v. Duvall*, No. 14-16-00869-CV, 2018 WL 1004659, at *3 (Tex. App.—Houston [14th Dist.] Feb. 2, 2018, no pet.) (mem. op.) (citing *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984)). We perform a claim-by-claim analysis to ensure that a particular plaintiff has standing to bring each of the particular claims asserted. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 153 (Tex. 2012).

We first address appellants' standing to assert their counterclaims for fraud, fraud by nondisclosure, negligence, and gross negligence. In their summary judgment responses, appellants argued that these claims were supported by the Bank's wrongful conduct related to procuring the personal guaranties. For example, in support of their negligence and gross negligence claims, appellants argued that the Bank owed them an "independent duty" not to fraudulently procure the guaranties. Similarly, appellants argued as to their fraud and fraud by nondisclosure claims that the Bank's misconduct induced them into signing the guaranties. They did not argue in their summary judgment responses that these claims were supported by the Bank's post-default conduct.[12] These counterclaims and alleged injuries are

---

[12] Appellants' summary judgment arguments as to these counterclaims differed materially from their pleading in support of those claims, which were based on the Bank's post-default conduct. The record does not reveal any objection by the Bank that appellants' summary judgment arguments exceeded the scope of their pleading.

19

grounded on appellants' commitment to personally guarantee the loan to Barquero. Thus, they have a sufficient personal stake in that controversy and have standing. *See Jessen*, 2018 WL 1004659, at *3; *Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 98 (Tex. App.—Houston [14th Dist.] 2014, no pet.). However, despite appellants' standing, we conclude for other reasons that summary judgment against appellants on these counterclaims was not reversible error, as explained below.

Our conclusion on standing is different as to appellants' counterclaim for tortious interference with prospective contracts. As to this claim, appellants' summary judgment response focused on the Bank's post-default conduct, not its conduct in procuring the guaranties. Appellants seek redress for injury to the Barquero SWD's value and the Bank's alleged attempts to interfere with Barquero's potential contracts with third parties after Barquero defaulted on the loan. Appellants undisputedly are the sole managing members of Barquero, a limited liability company. Generally, shareholders have no independent right to bring an action for injuries suffered by the corporation even though they may sustain losses indirectly through their ownership interests. *See Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Haut v. Green Café Mgmt., Inc.*, 376 S.W.3d 171, 177 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990), *superseded by statute on other grounds by Sneed*, 465 S.W.3d at 185); *Emmett Props., Inc. v. Halliburton Energy Servs., Inc.*, 167 S.W.3d 365, 371 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (holding shareholders had no right to bring suit for damages to corporation in their own names). It "is the nature of the wrong, whether directed against the corporation only or against the shareholder personally, not the existence of injury, which determines who may sue." *Haut*, 376 S.W.3d at 177.

20

Appellants do not own the Barquero SWD; Barquero owns it. The alleged damage to the well's value is Barquero's injury. Seeking damages for that injury, Barquero asserted the same claims appellants do, but the trial court ordered Barquero's claims to arbitration. Appellants lack standing to assert those claims in Barquero's stead. *See, e.g.*, *Siddiqui*, 504 S.W.3d at 360; *Barrera v. Cherer*, No. 04-13-00612-CV, 2014 WL 1713522, at *2 (Tex. App.—San Antonio Apr. 30, 2014, no pet.) (mem. op.) (member of limited liability company lacks standing to assert claims individually when cause of action belongs to company); *Haut*, 376 S.W.3d at 177; *Emmett Props., Inc.*, 167 S.W.3d at 371; *see also Wingate*, 795 S.W.2d at 719 ("A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong."). Because appellants lack standing to sue for Barquero's damages, the trial court did not err in granting summary judgment on appellants' counterclaim for tortious interference with prospective contracts.

2. *Fraud, Fraud by Nondisclosure, Negligence, and Gross Negligence Counterclaims*

The Bank also sought a no-evidence summary judgment on appellants' counterclaims for fraud, fraud by nondisclosure, negligence, and gross negligence. On appeal, appellants argue that the Bank's misconduct after default supplies the necessary evidence to support each element of those counterclaims. They cite evidence that the Bank misrepresented the enforceability of the collateral after the loan defaulted and that the Bank wrongfully attempted to sell the Barquero SWD. These arguments, however, do not align with appellants' contentions advanced in their summary judgment responses as to these counterclaims. As mentioned, appellants opposed no-evidence summary judgment as to these counterclaims based on the Bank's alleged misconduct in procuring the personal guaranties in the first place. Appellants' arguments on appeal and their arguments in the trial court are

21

grounded on substantively different alleged misconduct occurring at different times. Even if we assumed that appellants' appellate contentions had merit, they could not support a reversal because appellants did not expressly present them in their summary judgment responses. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (per curiam) ("A party who fails to expressly present to the trial court any written response in opposition to a motion for summary judgment waives the right to raise any arguments or issues post-judgment."). Thus, appellants have not shown that the trial court erred in granting no-evidence summary judgment on appellants' fraud, fraud by nondisclosure, negligence, and gross negligence counterclaims.

\* \* \*

In sum, appellants have not demonstrated that the trial court erred in granting summary judgment in the Bank's favor on their counterclaims. We overrule appellants' second issue.

### The Anti-suit Injunction

In their third issue, appellants contend the trial court erred by granting the Bank a permanent anti-suit injunction. Appellants challenge the injunction on several independent grounds: (1) the Bank failed to comply with procedural prerequisites for obtaining injunctive relief; (2) the Bank did not establish a factual or legal basis for permanent anti-suit injunctive relief, citing *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649 (Tex. 1996); and (3) the Bank did not first seek alternative remedies that would have adequately served the same purpose as the extraordinary relief of an anti-suit injunction.

22

## A.	Background Pertinent to the Anti-Suit Injunction

As part of the loan documents, Barquero signed an arbitration agreement with the Bank.  The arbitration agreement required Barquero and the Bank to "submit to binding arbitration all claims, disputes and controversies between or among them, whether in tort, contract or otherwise (and their respective employees, officers, directors, attorneys, and other agents) arising out of or relating to in any way . . . each and every debt, liability[,] and obligation of every type and description which [Barquero] may now or at any time hereafter owe to the Bank . . . or . . . any loan or security documents, and any loan's negotiation, execution, collateralization, administration, repayment, modification, extension, substitution, formation, inducement, enforcement, default or termination. . . ."  The agreement provided for arbitration to occur in Austin, Texas, which is in Travis County.

Barquero first inserted itself into this suit by filing cross-claims against the Bank, Lette, and Bearden for fraud, tortious interference, negligence, and gross negligence.  The Bank filed a motion to compel Barquero's cross-claims to arbitration pursuant to the arbitration agreement.  The trial court signed an agreed order compelling Barquero and the Bank to arbitrate Barquero's cross-claims in Travis County, severing Barquero's cross-claims into a separate lawsuit, and abating the severed lawsuit.

Thereafter, Barquero Fund, an LLC with Barquero as its sole managing member, filed suit in Dimmit County against the Bank for fraud, tortious interference, negligence, and gross negligence.  A review of the relevant pleadings reveals that, though the parties to the two suits are not identical,[13] the nature of Barquero Fund's claims against the Bank in Dimmit County generally mirror those

---

[13] In Travis County, Barquero, Wyrick, and Ruhnke sued the Bank, Lette, and Beardon; in Dimmit County, Barquero Fund sued the Bank.

23

of Barquero in Travis County. For example, Barquero, Wyrick, and Ruhnke in Travis County, and Barquero Fund in Dimmit County, all assert nearly identical factual allegations arising from the Bank's alleged post-default conduct in that the Bank purportedly made false statements to third parties that impaired the Barquero SWD's value and damaged appellants' interest therein.

In response to the Dimmit County lawsuit, the Bank filed in Travis County an unverified motion for sanctions and for an anti-suit injunction. The Bank argued that an anti-suit injunction was necessary to protect the Travis County district court's dominant jurisdiction, to prevent a multiplicity of suits, and to enforce the court's order compelling Barquero to arbitrate its claims against the Bank, thereby furthering Texas's policy to enforce arbitration agreements. Although the Bank acknowledged that Barquero Fund was neither a signatory to the arbitration agreement nor a party to the agreed arbitration order, the Bank asserted that Barquero Fund nonetheless was bound by the agreement and order because Barquero Fund, as the owner of the Barquero SWD, benefited from the Bank's loan.

After a non-evidentiary hearing, the trial court signed an order granting the anti-suit injunction. The next day, the court signed a "final judgment," in which the court granted summary judgment to the Bank, Lette, and Bearden on the merits, and also incorporated into the judgment the same anti-suit injunction language from the prior order. The judgment states that appellants and those acting in concert with them are "enjoined from initiating or proceeding with the Dimmit County suit and from initiating any further actions, claims[,] or causes of action against [the Bank] . . . relating to or arising from the claims made the basis of this lawsuit in any other court, tribunal[,] or forum."

In support of the permanent anti-suit injunction, the trial court found:

24

1. Defendants Michael Lee Wyrick aka Mike Wyrick and Gregory Michael Ruhnke aka Greg Ruhnke are the sole managing members of Barquero Energy Services, LLC. On December 12, 2016, Defendants caused [Barquero] to intervene in this case as a party to assert claims of fraud, tortious interference and negligence against [Bank] and its officers, Ed Lette and Ray Bearden, Individually ("Barquero Energy Counterclaims").

2. On March 30, 2017, [Barquero] consented to an Agreed Order Granting Plaintiff's Motion to Compel Arbitration ("Arbitration Order") that was entered by this Court, which severed and abated the Barquero Energy Counterclaims until further order of the Court.

3. On May 1, 2017, immediately after the Arbitration Order was entered, Defendants nonsuited by amendment the Barquero Energy Counterclaims that were subject to the Arbitration Order abating those claims.

4. On May 12, 2017, Defendants filed the same Barquero Energy Counterclaims against the Bank in the name of [Barquero Fund] in a lawsuit styled 17-04-13145- DCVAJA, *Barquero Fund, LLC v. Business Bank of Texas, N.A.*, in the 365th Judicial District Court of Dimmit County, Texas ("Dimmit County Suit"). The sole managing member of [Barquero Fund] is [Barquero] , which is an entity controlled solely by the Defendants.

5. [Barquero Fund] was the beneficiary and recipient of the $3,000,000 loan borrowed by [Barquero]. The Dimmit County Suit complains of and arises out of the same loan transaction made the basis of this suit that is subject to the Arbitration Agreement and Arbitration Order. The Arbitration Agreement provides for the arbitration in Austin, Travis County, Texas.

6. The Travis County Court has dominant jurisdiction over all parties and claims joined or that could be joined because: (1) this action was the first filed lawsuit among the parties and their affiliates and the claims made the basis of the Dimmit County Suit could have been brought in this Court; (2) the claims in the Dimmit County Suit arise out of the same transaction, occurrence and facts made the basis of this lawsuit and are inherently related to this case.

7. The Dimmit County Suit is a threat to this Court's jurisdiction. An Anti-Suit Injunction in this case will protect against: a) the threat to this Court's dominant jurisdiction, b) collateral attack of this Court's orders and judgments, c) evasion of important public policy concerns regarding enforcement of arbitration agreements, and d) a multiplicity of suits.

Based on the foregoing facts and the totality of circumstances presented in the record, clear equities favor the entry of an Anti-Suit Injunction as provided by *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996). This Court also has inherent power to protect its orders, judgments[,] and dominant jurisdiction with an anti-suit injunction.

## B.    Applicable Law

A unique and extraordinary remedy, an anti-suit injunction will issue "only in very special circumstances." *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996) (per curiam) (citing *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *Gannon v. Payne*, 706 S.W.3d 304, 306 (Tex. 1986)); *see Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005). The Supreme Court of Texas has identified those circumstances as: (1) addressing a threat to a court's jurisdiction; (2) preventing the evasion of important public policy; (3) preventing a multiplicity of suits; and (4) protecting a party from vexatious or harassing litigation. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 512 (Tex. 2010); *Golden Rule*, 925 S.W.2d at 651; *see also Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 433-34 (Tex. App.—Austin 2004, pet. denied). In all events, an anti-suit injunction is a remedy to be employed "sparingly and carefully" and only in the most "compelling" circumstances when "clear equity demands" it. *See Golden Rule*, 925 S.W.2d at 651; *Gannon*, 706 S.W.2d at 306; *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 891 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd w.o.j.). We

26

review a trial court's anti-suit injunction under an abuse-of-discretion standard. *Gannon*, 706 S.W.2d at 305.

We are confronted with a permanent anti-suit injunction that the trial court included in its judgment. It was not a pre-judgment temporary injunction of the sort at issue in *Golden Rule*. Here, the trial court based the injunction on essentially four grounds and cited *Golden Rule*. All parties on appeal likewise structure their arguments around *Golden Rule*. We, too, will engage the presumption that *Golden Rule* applies.[14] After considering each justification stated in the judgment, we agree with appellants that the anti-suit injunction is unsupportable for the reasons the Bank advanced and the trial court cited.

1.  *The Dimmit County suit is not a threat to the Travis County district court's jurisdiction.*

We begin with the court's finding that the injunction is necessary to protect against a threat to the Travis County district court's dominant jurisdiction. "The general common law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding). The dominant jurisdiction analysis is applicable, however, only when multiple suits are inherently interrelated and venue is proper in each county. *In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 322 (Tex. 2016) (orig. proceeding); *In re J.B. Hunt*, 492 S.W.3d at 294; *Gonzalez*, 159 S.W.3d at 622. The subject matter of multiple lawsuits can inherently

---

[14] The Dallas Court of Appeals has opined that once a lawsuit reaches final judgment, *Golden Rule*'s underlying justification—to shield a trial court's ability to bring to final adjudication all claims and parties before it—dissipates. *See Ortiz v. Legal Concierge, Inc.*, 263 S.W.3d 385, 391 (Tex. App.—Dallas 2008, pet. denied) (discussing difference in anti-suit injunctions issued before and after final judgment). We need not explore that subject given the parties' joint contention that *Golden Rule* applies to the anti-suit injunction included in this judgment.

interrelate even when, as here, the parties to each proceeding are not identical. *See Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988) ("It is not required that the exact issues and all the parties be included in the first action before the second is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues."); *In re Second Street Props LLC*, No. 14-16-00390-CV, 2016 WL 7436649, at *3-4 (Tex. App.—Houston [14th Dist.] Dec. 22, 2016, orig. proceeding) (mem. op.). The parties join issue on whether Barquero Fund's claims in Dimmit County are inherently interrelated to Barquero's and appellants' claims in Travis County. We need not decide this point for our analysis and will presume that the two suits are inherently interrelated and that Travis County acquired dominant jurisdiction.

We instead agree with appellants that the Dimmit County suit is not a threat to the Travis County district court's jurisdiction. As noted, the factual allegations and claims asserted by Barquero Fund in Dimmit County are essentially identical to the factual allegations and claims asserted by Barquero and appellants in Travis County, although the parties differ. While efforts to prosecute the claims in both venues would no doubt involve overlapping evidence, two suits "present[ing] identical issues" do not themselves pose an "irreparable miscarriage of justice" justifying an anti-suit injunction. *Golden Rule*, 925 S.W.2d at 652. At the time the Bank moved the Travis County court for an injunction and at the time the Travis County court signed its judgment containing the injunction, the Dimmit County court had taken no action purporting to affect the proceedings in Travis County. The court in the second-filed action (Dimmit County), for example, issued no order directed at the first-filed action (Travis County) as was the case in *Gonzalez*[15], nor

---

[15] *See Gonzalez*, 159 S.W.3d at 623. Distinguishing *Golden Rule*'s facts, the high court in *Gonzalez* upheld an anti-suit injunction because, among other reasons, the judge in the second-

28

had the second court (Dimmit County) refused to abate the claims before it in deference to the first court (Travis County) as was the case in *Henry v. McMichael*.[16] Insofar as our record reveals, the Bank did not seek to abate the Dimmit County proceeding before requesting an anti-suit injunction in Travis County, and the Bank has not shown that a motion to abate in Dimmit County—which the Bank acknowledged at oral argument is an available remedy—would have provided inadequate relief.[17] *See Atkinson v. Arnold*, 893 S.W.2d 294, 298 (Tex. App.—Texarkana 1995, no writ) (explaining that anti-suit injunction was improper "[a]bsent a showing that peculiar circumstances exist in this case to make the plea in abatement an inadequate remedy").

We have stated that: "[a]lthough there are 'no precise guidelines' for reviewing an anti-suit injunction, we will uphold an injunction issued to protect a court's dominant jurisdiction where, if the enjoined party were allowed to proceed, the dominant court would lose its ability to proceed with the case." *Parham Family Ltd. P'ship*, 434 S.W.3d at 790-91. That circumstance is not present here. Nothing about the Dimmit County proceeding impaired the Travis County court's ability to proceed to adjudicate the claims and render judgment, which in fact had occurred

---

filed action in Hidalgo County purported to order the district clerk in the first-filed action in Harris County to remove the case from the docket. *Id*.

[16] *See Henry v. McMichael*, 274 S.W.3d 185, 193 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). *Henry* affirmed an anti-suit temporary injunction. Though *Henry* concluded *Golden Rule* did not apply to the facts there presented, it noted that, to the extent *Golden Rule* applied, the court with dominant jurisdiction issued an injunction only after the judge in the second-filed suit denied a plea in abatement and set a summary judgment motion for hearing. *Id*.

[17] Filing a plea in abatement in a later-filed action is the general method for drawing a court's attention to another court's possible dominant jurisdiction. *In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (orig. proceeding); *see also In re Red Dot Bldg. Sys*., 504 S.W.3d at 322; *In re J.B. Hunt*, 492 S.W.3d at 294. When dominant jurisdiction applies, the court in the second-filed action is required to abate that proceeding, and mandamus may issue to compel such relief if the trial court fails to grant it. *See In re Red Dot*, 504 S.W.3d at 322; *In re J.B. Hunt*, 492 S.W.3d at 294.

almost simultaneously with the injunction's issuance. At that point, any need for an anti-suit injunction to guard the Travis County court's dominant jurisdiction to adjudicate the claims before it was diminished. And, with the Travis County court having rendered judgment on the merits, the Bank potentially was armed with the additional defenses of issue or claim preclusion that it could have asserted in Dimmit County. That court is obliged to respect the Travis County court's earlier judgment. *See Gannon*, 706 S.W.2d at 307.[18] For this reason, the possibility of inconsistent judgments does not justify an anti-suit injunction. *See id*.

Accordingly, the record does not show that "clear equity demands" a permanent anti-suit injunction to protect the Travis County district court's dominant jurisdiction. *See Frost Nat'l Bank*, 315 S.W.3d at 512; *Golden Rule*, 925 S.W.2d at 651; *Gannon*, 706 S.W.2d at 307. We therefore conclude that the trial court abused its discretion in issuing the injunction on grounds of protecting its dominant jurisdiction.

2.      *The injunction does not protect against a multiplicity of suits*.

The trial court also found the anti-suit injunction was needed to protect against a multiplicity of suits. To be sure, the claims Barquero Fund asserted against the Bank in Dimmit County are based on the same alleged facts as the claims Barquero asserted against the Bank in Travis County. But those claims were not pending simultaneously in the two proceedings because Barquero's Travis County claims against the Bank were severed, abated, ordered to arbitration, and, according to the

---

[18] "Once a final judgment is reached in one of the actions, the second forum is usually obliged to respect the prior adjudication under the rules regarding the enforcement of foreign judgments. Thus, even if both proceedings continue, there should be only one judgment recognized in both forums." *Id*.

30

judgment, nonsuited by Barquero.[19]  Further, the record does not show a multiplicity of suits as to Wyrick and Ruhnke because they are not parties to the Dimmit County suit.  At most, this case involves similar claims asserted by different parties in two different venues.

Even presuming the two proceedings were identical in substance and parties, a single parallel proceeding is neither a "multiplicity of suits" nor a miscarriage of justice and does not in itself create a clear equity justifying the extraordinary relief of an anti-suit injunction.  *Golden Rule*, 925 S.W.2d at 651; *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *see also AVCO Corp. v. Interstate Sw., Ltd*., 145 S.W.3d 257, 266 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (stating multiplicity argument typically supports issuance of anti-suit injunction when party files numerous lawsuits to relitigate issues in different courts).  The permanent anti-suit injunction does not further the interest of stopping a multiplicity of suits, and we conclude that granting the injunction on that ground was an abuse of discretion.

3.    *The injunction does not prevent evasion of important public policy concerns regarding enforcement of arbitration agreements*.

A third ground underlying the anti-suit injunction is to discourage evasion of the arbitration agreement between Barquero and the Bank and to enforce the trial court's arbitration order.  The Bank, however, did not show that Barquero Fund's claims in Dimmit County violate the arbitration order, which applies only to the claims Barquero asserted against the Bank.  Similarly, appellants' claims are not subject to the arbitration order, and appellants are not parties to the arbitration agreement.  Appellants allegedly caused a third party also not subject to the

---

[19] The judgment states that Barquero nonsuited by amendment its claims that were subject to the arbitration order.

31

arbitration order—Barquero Fund—to file claims in Dimmit County against the Bank. Whether the arbitration agreement binds Barquero Fund, Wyrick, or Ruhnke as non-signatories is not before us;[20] but the arbitration order clearly does not apply to their claims. These facts do not demonstrate the arbitration order's violation. The Bank notably does not seek to defend this discrete ground for the injunction in its appellate brief.

We conclude that the trial court abused its discretion in granting a permanent anti-suit injunction on the ground that it protects against the evasion of important public policy concerns regarding enforcement of arbitration agreements.

4. *The injunction is not supportable on the ground that it protects against collateral attack on the Travis County court's judgment.*

Finally, the trial court found that the injunction was warranted to protect against a collateral attack on its judgment.[21] Generally, a trial court has jurisdiction to enjoin other state court proceedings to enforce its judgment. *See, e.g.*, *Howell*, 143 S.W.3d at 434. That a court has jurisdiction to issue a permanent anti-suit injunction, however, does not mean it is proper to do so absent special and compelling circumstances or when the second suit does not interfere directly with enforcement of the court's judgment. *See Panda Energy Corp. v. Allstate Ins. Co*.,

---

[20] In its motion for an anti-suit injunction, the Bank argued that Barquero Fund was bound to the arbitration agreement between Barquero and the Bank under the direct benefits estoppel theory. But that is an argument more appropriate for the Dimmit County judge via a motion to compel Barquero Fund's claims to arbitration, which, as far as we are aware, has not been filed. The Travis County district court had no jurisdiction over Barquero Fund so it could not make a binding determination as to whether Barquero Fund is required to arbitrate under the agreement, *see, e.g.*, *Chesapeake Operating, Inc. v. Denson*, 201 S.W.3d 369, 373 (Tex. App.—Amarillo 2006, pet. denied) (trial court lacked jurisdiction to adjudicate potential claims of nonparties), and it made no finding in that regard.

[21] This was not a ground the Bank asserted in its motion for an anti-suit injunction. At the time the Bank filed the motion, the court had not yet rendered a judgment. The trial court, however, identified this rationale in the judgment as justification for the permanent anti-suit injunction.

91 S.W.3d 29, 34 (Tex. App.—Dallas 2002, pet. granted, judgm't vacated w.r.m.). "In cases where new litigation does not directly interfere with the efficacy of a prior final judgment, the court abuses its discretion by granting injunctive relief preventing the new litigation." *Id*. The Supreme Court of Texas has held that enjoining other lawsuits is not an appropriate method to enforce a judgment when the second suit has no effect on the judgment other than seeking to relitigate the same issues. *See, e.g.*, *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex. 1989) (original proceeding seeking writ of prohibition not appropriate to resolve claim of res judicata); *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 788 (Tex. 1978) (second suit properly barred only when it relitigates issues and filing of action or request for a hearing destroys effectiveness of the prior judgment). Other courts have refused to enjoin new litigation when defenses of issue or claim preclusion would provide adequate relief. *See, e.g.*, *Panda Energy*, 91 S.W.3d at 34; *Jones v. McDonald*, 880 S.W.2d 260, 263 (Tex. App.—Waco 1994, no writ); *Mid Plains Reeves, Inc. v. Baskin*, 793 S.W.2d 286, 288 (Tex. App.—El Paso 1990, no writ).

The record does not show that the Dimmit County suit interferes directly with enforcement, or affects the efficacy, of the Travis County judgment. The judgment is enforceable in Dimmit County and that court is required to respect it. To the extent the Bank contends the Dimmit County suit creates a risk of inconsistent judgments, its potential remedy lies in the Dimmit County district court,[22] absent evidence that preclusive defenses are not available or would not provide adequate relief. *Cf. Bridas*, 16 S.W.3d at 892 (evidence existed showing that res judicata defense may not be available or provide adequate relief in foreign jurisdiction of Afghanistan). The Bank has not attempted to assert the Travis County judgment's preclusive effect

---

[22] *See Panda Energy*, 91 S.W.3d at 36.

33

in the Dimmit County suit, and the trial court made no findings that such potential defensive measures would be unavailable or ineffective. In addition to potential preclusive defenses, the Bank still has the option to file a motion to compel Barquero Fund's claims in Dimmit County to arbitration.

On appeal, the Bank argues that the court's power to enforce its judgments is inherent in its jurisdiction and a court may employ suitable methods, such as an anti-suit injunction, to enforce its jurisdiction. The Bank cites *Rapid Settlements, Ltd. v. Symetra Life Insurance Co.*, 234 S.W.3d 788, 796 (Tex. App.—Tyler 2007, no pet.) ("The trial court possessed the inherent power to enjoin another proceeding whose prosecution would obstruct or interfere with the proper enforcement of its judgment."); *Bridas Corp.*, 16 S.W.3d at 892-93 (affirming anti-suit injunction when proof clearly showed intent to disregard the jurisdiction of the court and circumvent its final judgment); and *Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382, 387 (Tex. App.—Beaumont 2004, pet. denied) (anti-suit injunction appropriate to prevent re-litigation of issues in foreign jurisdiction subject to final judgment and preclusive res judicata effect of judgment). *Rapid Settlements*, *Bridas*, and *Sanders* contrast with our facts and do not support the present injunction. In those cases, courts enjoined other proceedings whose prosecution directly obstructed or interfered with the proper enforcement of judgment, *see Rapid Settlements*, 234 S.W.3d at 796, or evidence showed that res judicata may not be available in a foreign jurisdiction, *see Bridas*, 16 S.W.3d at 892, or the anti-suit injunction was appropriate to protect a class action settlement from attack in other jurisdictions, *see Sanders*, 127 S.W.3d at 387.

The facts in today's case do not present the requisite "very special circumstances" warranting an anti-suit injunction. *See Gannon*, 706 S.W.3d at 306. Were courts to approve permanent anti-suit injunctions merely as general judgment

34

enforcement mechanisms when compelling and clearly equitable situations do not demand them, they risk becoming a more commonplace addition to judgments where they are not truly needed. Traditional mechanisms are sufficient to enforce final judgments. We conclude that the trial court abused its discretion in granting a permanent anti-suit injunction on the ground that it protects against collateral attack on the Travis County court's judgment.

\*     \*     \*

We sustain appellants' third issue. Due to our disposition, we need not reach appellants' argument that the injunction fails for lack of compliance with non-jurisdictional procedural requirements. Likewise, we need not address appellants' fourth issue, in which they seek reformation of the injunction's language.

## Conclusion

We overrule appellants' first two issues challenging the summary judgment on their personal guaranties. We thus affirm that portion of the trial court's judgment. We sustain appellants' third issue and hold that the trial court's permanent anti-suit injunction constitutes an abuse of discretion. We modify the judgment to dissolve the anti-suit injunction and delete those portions of the judgment. We affirm the judgment as modified.


/s/     Kevin Jewell
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jewell.