

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00117-CV

Clinton **HABY** and Heidi Haby,
Appellants

v.

**RIVER TRAIL PROPERTY OWNERS ASSOCIATION**,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 18-434
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:   Irene Rios, Justice

Sitting:   Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: February 26, 2020

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

In this appeal, property owners Clinton Haby and Heidi Haby ("the Habys") argue the trial court erred when it declared restrictive covenants on their property to be legally binding and enforceable and ordered them to pay $10,000.00 in attorney's fees to the River Trail Property Owners Association. We affirm in part, and reverse and remand in part.

## BACKGROUND

On August 26, 1974, the developer of the River Trail Subdivision in Kendall County, Texas, signed an original declaration of covenants, conditions, and restrictions for the subdivision,

which was subsequently recorded in the county deed records. The declaration stated that each owner in the subdivision, by acceptance of a deed, agreed to pay the association annual assessments to promote the recreation, health, safety, and welfare of the property owners and to operate, improve, and maintain the common areas. The original declaration provided that it would bind the land for thirty years from the date it was recorded, included a provision authorizing its amendment, and set out the procedure for any such amendment.

In August 2004, an amended declaration was recorded in the county deed records. The amended declaration purported to extend the original declaration until August 26, 2024.

In 2012, the Habys purchased real property in the River Trail Subdivision. In 2013, the River Trail Property Owners Association ("the association") assessed an annual assessment charge against the Habys in the amount of $27.60, which the Habys paid. However, when the association assessed annual assessment charges in 2014, 2015, 2016, 2017, and 2018, the Habys refused to pay the charges.

In August 2018, the Habys filed the underlying suit against the association, seeking a declaratory judgment that (1) the original declaration of covenants, conditions, and restrictions had not been validly extended, (2) the amended declaration was not a valid extension of the original declaration, (3) the amended declaration was not binding on the Habys or their property, and (4) the association had no right to charge the Habys for assessment charges or put a lien on their property for unpaid charges. The association counterclaimed, seeking a declaration that the amended declaration was valid and enforceable. Additionally, the association sought to recover the Habys' unpaid assessment charges and its attorney's fees.

The parties filed competing summary judgment motions on the validity and enforceability of the amended declaration. In a no-evidence/traditional summary judgment motion, the Habys argued (1) there was no evidence that the restrictive covenants at issue were amended in strict

compliance with the amendment procedure set out in the original declaration, and (2) the evidence conclusively proved that the declaration was not amended in strict compliance with the declaration. The Habys further argued that because the restrictive covenants were not properly amended, they expired by their own terms on August 26, 2004. The Habys' summary judgment proof included copies of the original declaration and the amended declaration.

In a traditional summary judgment motion, the association argued it was entitled to judgment as a matter of law because it had complied with the amendment procedure in the original declaration. The association argued that the original declaration required (1) at least 75% of the members to sign an instrument authorizing an amendment of the original declaration, and (2) the recording of the amendment in the county deed records. The association's summary judgment proof included an affidavit from Kathleen Cassidy Goodman, the association's former attorney. In her affidavit, Goodman detailed the procedure she followed in amending the original declaration, explaining that she had obtained written approval, in the form of proxy vote forms, from the required percentage of association members, and then filed a different document, an amended declaration signed by the association's president, in the county deed records. Goodman also pointed out the original declaration required "any amendment" to be recorded, but it did not require the instrument signed by the members to be recorded.

The Habys filed a response to the association's summary judgment motion, in which they adopted and incorporated the arguments in their summary judgment motion and further argued, "[T]he summary judgment evidence clearly shows that the original [d]eclaration could only be amended by an instrument in writing signed by the requisite number of owners, and that such an amendment has to be filed."

The trial court granted the association's summary judgment motion and denied the Habys' summary judgment motion. In its judgment, the trial court declared that (1) the amended

declaration of covenants, conditions, and restrictions was legally binding and enforceable, (2) the association's actions in executing and recording the amended declaration met the original declaration's amendment requirements, and (3) the association had the right to enforce the amended declaration. The trial court also ordered the Habys to pay the association the sum of $127.74 for their unpaid assessment charges and $10,000.00 in attorney's fees. The Habys appealed.

### SUMMARY JUDGMENT STANDARD OF REVIEW

We review a trial court's ruling on a summary judgment motion de novo. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). To prevail on a traditional summary judgment motion, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). In reviewing a trial court's summary judgment ruling, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Knott*, 128 S.W.3d at 215. When competing summary judgment motions are filed, each movant has the burden of establishing its entitlement to judgment as a matter of law. *Tarr*, 556 S.W.3d at 278. If the trial court grants one motion and denies the other, then we consider all the evidence and determine all questions presented. *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).

### VALIDITY OF THE AMENDMENT

In their first issue, the Habys argue the trial court erred in granting summary judgment in favor of the association and in declaring the amended declaration legally binding and enforceable. The Habys assert the association was not entitled to summary judgment because it did not comply with the amendment procedure set out in the original declaration.

To resolve this issue, we must construe the amendment provision in the original declaration, which provides:

> Section 7.3 <u>Amendment</u>   The covenants and restrictions of this declaration shall run with and bind the land for a term of thirty (30) years from the date this declaration is recorded. This declaration may be amended during the first twenty (20) year period by an instrument signed by not less than ninety percent (90%) of each class[1] of members, and thereafter by an instrument signed by not less than seventy-five percent (75%) of each class of members. Any amendment must be recorded in the Deed Records of Kendall County, Texas.

The Habys argue, "The amendment procedure in the [original] [d]eclaration was not followed in adoption of the [a]mended [d]eclaration because the [original] [d]eclaration provides that it can only be amended by an instrument in writing and that the amendment must be recorded." They further argue: "The [a]mended [d]eclaration was not signed by the requisite number of members . . . . It was instead signed only by the [a]ssociation's [p]resident." According to the Habys, "The instrument to be signed constitutes the amendment, and that signed instrument must be filed in the deed records." Thus, the Habys urge us to construe section 7.3 as requiring the signing of an instrument by the requisite percentage of members and the recording of the same signed instrument in the county deed records.

"A declaration containing restrictive covenants in a subdivision defines the rights and obligations of property ownership, and the mutual and reciprocal obligation undertaken by all purchasers in a subdivision 'creates an inherent property interest possessed by each purchaser.'" *W. Hills Harbor Owners Ass'n v. Baker*, 516 S.W.3d 215, 220 (Tex. App.—El Paso 2017, no pet.) (quoting *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 636 (Tex. 1987)). Generally, the authority to amend restrictive covenants requires three conditions to be met: (1) the declaration creating the original restrictions must establish both the right to amend and the method

___
[1]The original declaration created two classes of voting members, "Class A" and "Class B." However, according to the terms of the original declaration, these distinctions ceased to exist, at the latest, on January 1, 1979.

of amendment; (2) the right to amend implies only changes contemplating a correction, improvement, or reformation of the agreement, rather than the complete destruction of it; and (3) the amendment must not be against public policy. *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 313 (Tex. App.—Fort Worth 2001, no pet.). Thus, restrictive covenants must be amended in the "precise manner" authorized in the original declaration. *Benders Landing Estates Prop. Owners Ass'n, Inc. v. LGI Land, LLC*, No. 09-16-00183-CV, 2018 WL 1188814, at *3 (Tex. App.—Beaumont 2018, no pet.); *Youssefzadeh v. Brown*, 131 S.W.3d 641, 644-45 (Tex. App.— Fort Worth 2004, no pet.).

We review a trial court's construction of a restrictive covenant de novo. *Tarr*, 556 S.W.3d at 279. Courts treat unambiguous covenants as valid contracts between individuals. *Id*. at 280. Like a contract, a covenant is ambiguous if it is susceptible to more than one reasonable interpretation and unambiguous if it can be given a definite or certain legal meaning. *Id*. The fact that parties disagree about the interpretation of a covenant does not mean it is ambiguous. *Id*. In construing a restrictive covenant, our goal is to give effect to the drafter's objective intent as reflected in the language chosen. *Id*. Thus, we examine the restrictive covenant as a whole in light of the circumstances present when the parties made the agreement, and we give the words used in the restrictive covenant the meaning they commonly held when the covenant was written. *Id*. Courts may not enlarge, extend, stretch, or change the words used in a restrictive covenant. *Id*. When a restrictive covenant leaves a term undefined, we presume the parties intended its plain, generally accepted meaning and give the term its ordinary meaning. *See Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011).

Neither the Habys nor the association assert that section 7.3 is ambiguous. We conclude that section 7.3 is unambiguous. Section 7.3 states the original "declaration may be amended" "by an instrument" signed by the requisite percentage of members. Section 7.3 further states, "[A]ny

amendment must be recorded in the Deed Records . . . ." The original declaration does not define the terms "instrument" or "amendment." Courts often consult dictionaries to determine the natural meaning of common-usage terms that are not defined in a restrictive covenant. *See Epps*, 351 S.W.3d at 866. The dictionary defines "instrument" as "a formal legal document," and "amendment" as "a change or addition to a document." SHORTER OXFORD ENGLISH DICTIONARY 1399, 69 (6th Ed. 2007). After considering the provision as a whole, and without enlarging, extending, stretching, or changing its words, we construe section 7.3 as requiring the requisite percentage of members to sign a formal legal document expressing approval of any amendment; however, it does not require the recording of that same signed document in the county deed records. By its express terms, section 7.3 only requires the recording of the "amendment," that is, the change or addition to the original declaration. Such a construction gives effect to the drafter's objective intent as expressed in section 7.3's language.

Having construed the language of section 7.3, we now determine if the summary judgment evidence established that the association complied with section 7.3's amendment procedure. The undisputed evidence showed that Goodman sent letters to each of the property owners in the subdivision asking them to sign proxy vote forms indicating whether or not they agreed to amend the original declaration by extending it for an additional twenty years. One hundred out of one hundred twenty-one property owners (or eighty-three percent) signed and returned proxy vote forms agreeing to amend and extend the declaration for an additional twenty years. The proxy vote form signed by each of the property owners was the "instrument" (or "formal legal document") referenced in section 7.3 of the original declaration. *See Hirdler v. Boyd*, 702 S.W.2d 727, 731 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) ("An instrument is a legal document (such as a bill, bond, deed, mortgage, lease, note, or will) which gives formal expression to a legal act or agreement, or which creates, secures, modifies, or terminates a right."). Goodman then prepared

the amended declaration of covenants, conditions, and restrictions, and the board president, Thomas Watson, signed the amended declaration in his capacity as the representative of the members of the association on August 10, 2004. The amended declaration was recorded in the Kendall County deed records.[2]

We conclude the evidence conclusively established the association's compliance with the original declaration's amendment requirements. At least seventy-five percent of the members signed "an instrument" authorizing the amendment, and then an amended declaration was recorded in the county deed records. Because the association complied with the amendment procedure set out in the original declaration, the amended declaration was legally binding and enforceable. We hold that as to the declaratory judgment claims, the trial court did not err in granting the association's summary judgment motion and in denying the Habys' summary judgment motion. We overrule the Habys' first issue.[3]

## ATTORNEY'S FEES

In its summary judgment motion, the association asked the trial court to award it reasonable and necessary attorney's fees in the amount of $16,000.00 pursuant to "the Texas Declaratory Judgment Act and/or the Texas Property Code." The association's request for attorney's fees was supported by an affidavit from one of its attorneys. Attached to the Habys' summary judgment

---

[2]Goodman testified in her affidavit: "While the Original Declaration required 'any amendment' to be recorded, it did not require the instrument signed by the members to be recorded. Therefore, the Proxy Vote Form[,] namely the instrument signed by the 100 lot owners who agreed to amend the Original Declaration, was not recorded."

[3]The Habys' brief contains other arguments concerning the granting of the association's summary motion; however, these arguments were not presented to the trial court. Because the other arguments were not presented to the trial court, we cannot address them on appeal. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("[I]ssues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion . . . ."); *Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 353-54 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Even if we assumed that appellants' appellate contentions had merit, they could not support a reversal because appellants did not expressly present them in their summary judgment responses.").

response was an affidavit from their attorney stating that the amount of legal fees claimed by the association was excessive and unreasonable. The trial court awarded the association attorney's fees in the amount of $10,000.00.

In their second issue, the Habys argue the trial court erred in awarding attorney's fees because the association failed to comply with the mandatory requirements of section 209.0064(b) of the Texas Property Code. However, the judgment reflects that the trial court granted the association's request for attorney's fees "pursuant to Civil Practice & Remedies Code section 37.009," not pursuant to the property code. Thus, the Habys' argument fails to challenge the actual basis for the attorney's fees award. Because the Habys do not challenge the actual basis for the attorney's fees award, we overrule their second issue. *See Kroger Co. v. Am. Alternative Ins. Corp.*, 468 S.W.3d 766, 772 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (overruling an appellate issue when the appellants' brief failed to present an argument challenging the basis for the trial court's ruling).

In their third issue, the Habys argue the trial court erred in awarding the association attorney's fees because a genuine issue of material fact existed as to the reasonableness and necessity of the association's attorney's fees. In response, the association contends the trial court did not err because the affidavit submitted by the Habys' attorney did not controvert its summary judgment proof on attorney's fees.

To constitute proper summary judgment evidence, an affidavit must be made on personal knowledge, set forth facts that would be admissible in evidence, and show the affiant's competence. *AU Pharm., Inc. v. Boston*, 986 S.W.2d 331, 338 (Tex. App.—Texarkana 1999, no pet.); *see* TEX. R. CIV. P. 166a(f). According to the association, the affidavit submitted by the Habys' attorney did not properly controvert its summary judgment proof because it merely stated that the amount of attorney's fees claimed by the association was unreasonable because it was in

excess of the Habys' attorney's fees. We disagree. The affidavit from the Habys' attorney stated his qualifications and that the contents of his affidavit were based on his personal knowledge. Additionally, in the affidavit, the attorney testified that the $16,000.00 in legal fees claimed by the association was excessive and unreasonable based on the limited work that had been done in this case. The attorney further testified that there was no justification for the association's legal fees being twice those incurred by the Habys, especially given that the billing rate charged by the association's attorneys was lower than his billing rate. The attorney finally testified that there was no reason for the association's attorneys to have spent eighty hours on the case because there had been no depositions, no mediation, and no hearings. We conclude the affidavit from the Habys' attorney properly controverted the reasonableness and necessity of attorney's fees claimed by the association. *See Affordable Motor Co., Inc. v. LNA, LLC,* 351 S.W.3d 515, 522-23 (Tex. App.—Dallas 2011, pet. denied) (holding the trial court erred in awarding attorney's fees in a summary judgment proceeding when the attorney's fees were controverted by an affidavit from opposing counsel opining that the fees claimed were excessive).

"[T]he determination of the disputed fact issue of attorney's fees [is] improper in a summary judgment proceeding." *Wich v. Fleming*, 652 S.W.2d 353, 358 (Tex. 1983) (opinion on motion for rehearing). Because a genuine issue of material fact existed as to the reasonableness and necessity of the association's attorney's fees, we conclude the trial court erred in granting summary judgment in favor of the association on its claim for attorney's fees. Therefore, we sustain the Habys' third issue.

## CONCLUSION

Because the trial court erred in granting summary judgment on the association's claim for attorney's fees, we reverse the part of its judgment granting the association $10,000.00 in

attorney's fees, and remand this case to the trial court for trial on the association's claim for attorney's fees. We affirm the remainder of the judgment.

Irene Rios, Justice